## CHICAGO RYS. CO. v. KRAMER.

(Circuit Court of Appeals, Seventh Circuit. April 18, 1916.)

No. 2230.

1. CARRIERS ☜306(2)—RELATION OF "PASSENGER"—OPERATING OVER ANOTHER'S ROAD.

One who is a passenger of a street railroad company operating its through cars over the tracks of another such company with its consent, as evidenced by its acceptance of an ordinance, is in law also a "passenger" of the other company, and entitled to the exercise by each of the same degree of care.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1249; Dec. Dig. ☜306(2).

For other definitions, see Words and Phrases, First and Second Series, Passenger.]

2. CARRIERS ☜316(4)—INJURY TO PASSENGER—RES IPSA LOQUITUR.

Regarding negligence of defendant, owner of a street railroad, which ran its car into the car of another street railroad company standing on defendant's track, over which it was being operated with defendant's

consent, injuring a passenger on the standing car, the principle of res ipsa loquitur is applicable to a count charging general negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1287; Dec. Dig. ☞316(4).]

3. NEGLIGENCE ☞136(6)—DIRECTING VERDICT—RES IPSA LOQUITUR.

Where the principle of res ipsa loquitur is applicable, on a count charging general negligence, an instruction to find for plaintiff would be proper, in the absence of testimony tending to explain the occurrence on any theory other than that of defendant's negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 285; Dec. Dig. ☞136(6).]

4. APPEAL AND ERROR ☞1062(1)—HARMLESS ERROR—TAKING COUNT FROM JURY.

The measure of damages on all the counts in a personal injury action being the same, any error in overruling motion to take one of them from the jury was harmless, where the jury might properly have been instructed to find for plaintiff on one of the others.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4212; Dec. Dig. ☞1062(1).]

5. EVIDENCE ☞477(4)—APPEARANCE OF PERSON.

Evidence that a few minutes after plaintiff's injury, while her foot was being bathed, she was screaming, is admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2240; Dec. Dig. ☞477(4).]

6. WITNESSES ☞248(2)—RESPONSIVENESS OF ANSWER.

The answer, "She was screaming with pain in her side," in the absence of specific objection that it was not responsive to the question as to how she appeared, will be deemed to mean, not that her screams were in fact due to pain in the side, but that they appeared to witness to be caused thereby.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 862; Dec. Dig. ☞248(2).]

7. EVIDENCE ☞268—STATEMENT TO PHYSICIAN.

Unless it clearly appears that plaintiff's description to a physician to whom she had gone of her subjective symptoms was made solely to aid an expert to give evidence on the trial in an action for her injury, and not in good faith to assist him in diagnosing her case for purpose of treatment, it is admissible, though the weight to be given it by the jury may be slight.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1061, 1062; Dec. Dig. ☞268.]

8. EVIDENCE ☞554—EXPERT TESTIMONY—CAUSE AND EFFECT.

There being no conflict as to the manner of an injury, a physician may testify that the accident did cause, and not merely that it might have caused, the injuries.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2375; Dec. Dig. ☞554.]

9. EVIDENCE ☞547—EXPERTS—SPECULATIVE TESTIMONY.

Testimony of a physician, after he had described the conditions found during a period of treatment of plaintiff, a profuse discoloration of the abdominal region, jaundice, blocking of the bowels, retention of the water, high pulse, etc., and had stated that he gave her treatment of the stomach, bowels, and liver, that it was his opinion that there had been an injury to the stomach and liver, was not speculative.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2364; Dec. Dig. ☞547.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**10.** APPEAL AND ERROR ☞1047(3)—HARMLESS ERROR—RULINGS ON EVIDENCE.
There being uncontradicted testimony as to the injuries received by plaintiff, their permanent character, and the sufferings endured by her, any error in refusing to strike out as speculative the answer of a physician, asked if he formed an opinion as to the trouble with her abdomen and hip, that his diagnosis and conclusions were that there were possible adhesions there, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4149; Dec. Dig. ☞1047(3).]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by Marie Kramer against the Chicago Railways Company and another. Judgment for plaintiff, and defendant named brings error. Affirmed.

Charles Le Roy Brown, of Chicago, Ill., for plaintiff in error.

C. Helmer Johnson and Arthur H. Chetlain, both of Chicago, Ill., for defendant in error.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

MACK, Circuit Judge. Writ of error to reverse a judgment for $3,350 against the plaintiff in error in an action against it and the Chicago City Railway Company. Diversity of citizenship is the ground of federal jurisdiction. At the conclusion of the plaintiff's case, the defendant the Chicago Railway Company moved for a directed verdict. The motion was overruled, and it rested its case. Thereupon the defendant Chicago City Railway Company offered evidence tending to establish its freedom from negligence. At the conclusion of the entire case each defendant moved for a directed verdict on each count of the declaration separately. All motions were overruled, the cause was submitted to the jury, and a verdict was rendered in favor of the Chicago City Railway Company and against the Chicago Railways Company.

Plaintiff's injuries were received under the following circumstances: She had just stepped upon the rear platform of a south-bound street car standing at the north side of the intersection of Western avenue and Twelfth street in Chicago and owned and operated by the Chicago City Railway Company, when another south-bound car, owned and operated by the Chicago Railways Company, came into collision with the rear platform of the Chicago City Railway Company's car, breaking it and bending the front end of the other car. Plaintiff introduced no evidence as to the condition of the brakes or stopping apparatus. The track on Western avenue was owned, operated, and under the control of the Chicago Railways Company, and was used by the Chicago City Railway Company for the operation of through route cars under an ordinance of the city of Chicago passed in February, 1907.

The section of the ordinance relating to the Chicago City Railway Company introduced in evidence provides as follows:

"The company will co-operate with any corporation or corporations operating such of the street railway lines now operated by the receivers of the Chicago Union Traction Company as may be parts of the through routes in

this ordinance or in 'Exhibit C' referred to, in establishing and maintaining through lines of cars over the street railway lines of the company and the street railway lines of the Union Traction System entering the South Division of the said city, north of Twelfth street, which shall carry passengers from the South Division of the said city to the other two divisions of the said city, or in the reverse directions, through the portion of the South Division of said city north of Twelfth street, for a single fare."

That relating to the Chicago Railways Company reads:

"The company will co-operate with any corporation or corporations operating such of the street railway lines now operated by the Chicago City Railway Company as may be parts of the through routes in this ordinance or in 'Exhibit C' referred to, in establishing and maintaining through lines of cars over the street railway lines of the company and the street railway line of the Chicago City Railway system entering the South Division of the said city north of Twelfth street, which shall carry passengers from the North and West Divisions of the said city to the South Division of the said city, or in the reverse directions, through the portion of the South Division of said city north of Twelfth street, for a single fare."

Exhibit C therein referred to provides as follows:

"Route No. 10: 'Beginning at Seventy-First street and Western avenue; north on Western avenue to Belmont avenue, returning by the same route.' "

It was stipulated that, in accordance with the provisions of the ordinances and the acceptance thereof by each of the defendant companies, the operation of the through route cars by the one company over tracks belonging to the other was under the direction and supervision of a board of supervising engineers appointed by the city of Chicago, and under the directions of this board each company was required to permit the other to operate cars over its various lines and to give and receive transfers therefor.

Errors in the charge and in denying the Chicago Railways Company's motions are based on its contentions made in the trial court and renewed in this court that the plaintiff was a passenger of the Chicago City Railway Company alone; that the Chicago Railways Company was a stranger to her, and owed her the duty, not of the highest degree of care, but only of ordinary care; that the collision alone under the circumstances narrated did not justify the application of the principle of res ipsa loquitur at least as against it, the stranger company; and that in any event the total failure of affirmative proof of the specific negligence charged against it in at least one of the counts, namely, a negligent failure to keep the equipment of its car in proper order, makes the refusal of the court to grant this defendant's motion for an instruction in its favor on this count reversible error.

[1] 1. In Illinois, the liability of a lessor public service company for the acts and omissions of its lessee, is well established. As declared in Anderson v. West Chicago Street Railway Company, 200 Ill. 329, 333, 65 N. E. 717:

"The relation * * * is not that of landlord and tenant, but that of principal and agent, or master and servant."

While in some of the lower federal courts it has been said that in the determination of the relation between lessor and lessee company

and the liability of the former for the latter's acts, the federal courts will not deem themselves bound by the state court's views in the absence of a controlling statute, we are of the opinion that under N. C. R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159, and I. C. R. R. Co. v. Sheegog, 215 U. S. 308, 30 Sup. Ct. 101, 54 L. Ed. 208, the local law, as interpreted by the state court, controls. While each of these cases originated in the state court, it is to be noted that in the Zachary Case the question involved was the interpretation of the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665]), and that, while the state Supreme Court held this inapplicable to an intrastate lessor corporation not itself actually engaged in interstate commerce, the federal Supreme Court held it to be a necessary result of the local law, constituting the lessee the lessor's substitute or agent, and making the latter responsible for the former's acts and omissions, whether in interstate or in intrastate commerce, that "the lessor is a common carrier by railroad engaging in commerce between the states," and that an employé of the lessee is employed by such lessor in interstate commerce, within the meaning of the federal act.

The statement in the Sheegog Case, "Now whether we agree with it or not, the doctrine is familiar that in the absence of statute a railroad company cannot get rid of its liability attached to the exercise of its franchise by making a lease," was not intended, in our judgment, to cast any doubt upon the views expressed in Railroad Company v. Barron, 5 Wall. 90, 18 L. Ed. 591. There the action was begun in the federal court. The defendant was the owner of the road and the actual carrier of the passenger. It was held liable for the negligence of another company operating by consent, on its road. The court said that the liability had "been settled, and we think rightly, in the courts of Illinois holding the owner of the road liable."

We are unable to see any real distinction between the lessor and lessee cases and the present case. The Chicago Railways Company was the owner of the track and furnished the motive power. It had the right and the duty to operate its own cars thereon. The privilege granted to the Chicago City Railway Company to operate its through cars over the Chicago Railways Company's tracks was necessarily with the consent and permission of the latter company, a consent evidenced by its acceptance of the ordinance. The Chicago City Railway Company while operating its cars over the tracks and under the electric power furnished by the Chicago Railways Company was performing the public duty of the latter company as its agent or substitute in the same measure as a lessee company to which similar privileges had been granted. It follows that, while the plaintiff was a passenger of the Chicago City Railway Company, she was also as a matter of law a passenger of the Chicago Railways Company and entitled to the exercise by each of them of the same degree of care.

[2, 3] 2. Plaintiff's rights, therefore, are the same as would have arisen if her injuries had been caused, under similar circumstances, by a collision of two cars, both belonging to the defendant Chicago Railways Company. In such a case, concededly res ipsa loquitur would

apply. For there, as here, the uncertainty as to whether the injury was due to the negligence of the employés of the first car or of the second car or of both would support a charge of general negligence against the defendant Chicago Railways Company.

While res ipsa loquitur does not shift the ultimate burden of proof, and at times only calls for without necessarily requiring explanation or rebuttal (Sweeney v. Erving, 228 U. S. 233, 240, 33 Sup. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905), in the instant case, in view of the passenger carrier relation, the prima facie case made for her through proof of the circumstances of the collision and the exercise of due care for her own safety would not merely have justified the submission of the question of the defendant's negligence to the jury, but, in the absence of any testimony offered by the defendant and of any matters in the testimony offered on behalf of the plaintiff tending to explain the occurrence on any theory other than that of the defendant's negligence, an instruction to find for the plaintiff on the count charging general negligence would have been proper. North Chicago Street Railway Company v. Cotton, 140 Ill. 486, 29 N. E. 899; Central Vermont Ry. Co. v. Cauble, 228 Fed. 876, 878, —— C. C. A. ——.

[4] In Wilmington Mining Company v. Fulton, 205 U. S. 77, 27 Sup. Ct. 412, 51 L. Ed. 708, the failure of the court to grant a motion to take from the jury a count unsupported by the evidence was held to be reversible error, even though there was evidence justifying the submission of another count to the jury, inasmuch as it would be impossible to say that the verdict was not based on the former count. Subsequently, in Scott v. Parlin & Orendorf, 245 Ill. 460, 92 N. E. 318, the Supreme Court of Illinois laid down a contrary rule, basing its decision, not on any statutory provision, but on the analogy of section 78 of the Illinois Practice Act (Laws 1907, p. 459).

Assuming that the practice thus sanctioned by the state court is not controlling in the federal courts, yet inasmuch as the trial court, in this case, unlike the Wilmington Mining Company Case, might properly have instructed the jury to find for the plaintiff on at least one of the counts, and as the measure of damages was necessarily the same on all of the counts, the error, if any, in overruling the defendant's motion, could not be prejudicial or furnish a ground for reversal.

[5, 6] 3. Error is also assigned on the admission of certain testimony, all bearing solely upon the matter of the injuries and the amount of the damages.

(a) Plaintiff lived and worked on Western avenue just north of Twelfth street. A few minutes after the accident, she came home. Her employer assisted her to her room, got a basin of water, and was bathing her foot when a neighbor entered. Asked for a description as to how plaintiff appeared to her at that time, the neighbor testified through an interpreter, "She was screaming with pain in her side."

A motion to strike out this answer was properly overruled; that she was screaming, irrespective of the cause, was clearly admissible.

Moreover, in the absence of a specific objection that it was not responsive, the answer must be deemed to mean, not that the screams were in fact due to the pain in the side, but that they appeared to the witness to be caused thereby. Plaintiff's actions and gestures, her appearance at the time, might well be so described.

[7] (b) The accident occurred in June, 1913; the trial in November, 1914. In February, 1914, the month in which this action was brought, her original physician and another doctor examined her in Chicago. The first physician testified, in answer to the court's question whether she came at that time as a patient, "Yes; for treatment and also for examination." He further stated that she was in his office twice and that he treated her; that she was to have come again, but that she went home; that he supposed she went to her family physician. In partial answer to questions as to the examination made and complaints of pain at the time, he testified that he found tenderness over the abdomen and back, a swelling of the left leg, and that she complained of weakness and inability to stand any length of time. Objections to the question and motion to strike out the answers, on the ground that they called for and gave subjective symptoms displayed at an examination pending litigation, and "after plaintiff testified that she did not go to the doctor at that time for treatment," were overruled.

If plaintiff had in fact so testified, there would be more force in the objections, as her complaints at an examination sought by her solely for litigation purposes are usually held inadmissible (but see 5 Wigmore, Evidence [2d Ed.] § 688, note 2, commenting on C. & O. Ry. v. Wiley, 134 Ky. 461, 121 S. W. 402), even though the physician does not know the purpose of her visit. Her testimony on cross-examination was as follows:

"Dr. MacFarland examined me about six months ago. Q. Has he examined you at any time since then? A. No; he didn't exactly examine since then. He examined me thoroughly six months ago. Q. That was when you were starting to get ready for your lawsuit? A. Yes, sir. Q. Is that what he examined you for? A. Yes, sir. Dr. Burns and Dr. MacFarland examined me together about six months ago at Dr. MacFarland's office. * * * I have been at home in Burlington, and have seen Dr. Proudy from time to time, but he has not treated me since last spring."

If "that," in the question, "Is that what he examined you for?" means the lawsuit, the answer does not in any manner indicate that she did not go to her physician also and primarily for treatment. That she required treatment at the time is clearly shown by the physician's testimony that he did in fact treat her and her testimony that on her return home the local physician continued to treat her.

We cannot agree with Kath v. Wisconsin Ry. Co., 121 Wis. 503, 99 N. W. 217, that such testimony must be excluded unless made during examination before suit and solely for the purpose of treatment. As is said in N. P. R. R. v. Urlin, 158 U. S. 271, 274, 15 Sup. Ct. 840, 39 L. Ed. 977:

"As one of the principal questions in the case was whether the injuries of the defendant were of a permanent or a temporary character, it was certainly competent to prove that, during the two years which had elapsed between the

happening of the accident and the trial, there were several medical examinations into the condition of the plaintiff. Every one knows that, when injuries are internal and not obvious to visual inspection, the surgeon has to largely depend on the responses and exclamations of the patient when subjected to examination."

The court cites with approval Fleming v. Springfield, 154 Mass. 520, 522, 28 N. E. 910, 26 Am. St. Rep. 268, that:

"It may be fairly inferred that it was made for the purpose of medical advice and treatment. At any rate, although it was only a day or two before, or possibly during, the trial, it does not appear that such is not the case."

Unless it be clear that the patient's description of her subjective symptoms was made solely for the purpose of aiding an expert to give evidence on the trial, and not in good faith, to assist the physician in diagnosing the case for the purpose of treatment, it is not to be deemed inadmissible, though the weight to be given it by the jury, varying according to the circumstances, may be but slight. C., C., C. & I. R. R. Co. v. Newell, 104 Ind. 264, 270, 3 N. E. 836, 54 Am. Rep. 312.

[8] (c) This case falls within the principle of City of Chicago v. Didier, 227 Ill. 571, 81 N. E. 698, and not within that of Schlauder v. C. & S. T. Co., 253 Ill. 154, 97 N. E. 233. Here, as in the Didier Case, there was no conflict as to the manner of the injury. It was, therefore, not improper to permit the physician to state that the accident did cause, and not merely that it might have caused, the injuries. 5 Wigmore, Evid. § 1976.

[9] (d) As a result of the accident, plaintiff, a hardworking healthy woman 24 years old, earning $5 per week and board and lodging, was confined to her bed nearly three weeks, and then for over two months got about on crutches. The left foot was cut about 3½ inches on the inner border of the heel. It required 14 stitches. Deep abrasions of the skin were formed over the right hip. A physician attended her daily for four or five weeks before she left the city for her home in Wisconsin. After he had described the conditions found during this period of treatment,—a profuse discoloration of the abdominal region, jaundice, blocking of the bowels, retention of the water, high pulse, etc.—and had stated that he gave her treatment and medicine for the stomach, bowels, and liver, he was asked, "Was it your opinion that there had been an injury to the stomach and liver?" An objection that this was speculative, and did not call for a physical condition which he found, was overruled, and he answered affirmatively.

The ruling of the court was entirely proper. The diagnosis was not, as in Lyons v. Chicago City Railway Co., 258 Ill. 75, 101 N. E. 211, speculative; that is, that there might have been such an injury, but clear and positive that there was such an injury.

[10] (e) Answering the question, "Did you form an opinion as to the trouble with her abdomen and hip at that time?" he answered, "Why, my diagnosis and conclusions were that there were possible adhesions there, from such a crushing injury, adhesions of the intestines." "Possible adhesions" is speculative; it would have been

proper to grant the motion to strike it out on that ground. In view, however, of the uncontradicted testimony as to the injuries received, their permanent character, and the sufferings endured by the plaintiff, we are of the opinion that, even if the failure to strike it out should be held error (but see 5 Wigmore, § 1976, commenting on the Lyons Case, supra), the error cannot be deemed to have been so prejudicial as to justify a reversal.

Judgment affirmed.