### IN RE ESTATE OF GJERMUND OLSON.
### THORE T. JOHNSON, PROPONENT.
### OLE R. ENGER, CONTESTANT.[1]

February 8, 1929.

No. 26,964.

[1]Reported in 223 N. W. 677.

See note in 37 L.R.A.(N.S.) 595; 11 R. C. L. 603; 2 R. C. L. Supp. 1282;
4 R. C. L. Supp. 713.
See note in 17 A. L. R. 359; 42 A. L. R. 1454; 8 R. C. L. 861; 2 R. C. L.
Supp. 667; 4 R. C. L. Supp. 578.

*Gray & Gray* and *Meighen, Knudson & Sturtz,* for appellant.
*Hopp & Larson* and *Sasse, French & Dunnette,* for respondent.

STONE, J.

In this will contest a jury has found specially that the testator did not have testamentary capacity and that undue influence was exerted by proponent, Thore T. Johnson. He appeals from the order denying his motion for a new trial.

Gjermund Olson, a long-time resident of Fillmore county and more than 85 years old, died there June 5, 1927. He had been blind since 1913 and in feeble physical health for some time. He was losing his eyesight in 1909 and in that year petitioned for the appointment of proponent as his guardian, on the self-assigned grounds of failing sight and incompetency to manage his property. Proponent was then appointed guardian of the person and estate of decedent and served as such until the latter's death. On the question of capacity there is an abundance of testimony in support of the adverse verdict. The state of the record on the issue of undue influence will be gone into later.

In view of certain argument, it seems appropriate that reference be made first to rule VIII, subd. 2, of this court. It permits in the printed record "such abridgment of the settled case as will clearly and fully present the questions arising on the appeal. Even in cases where the sufficiency of the evidence is involved only that pertinent to the issues to be presented need be printed. * * * All matters in the return not necessary to a full presentation of the questions raised by the appeal shall be excluded from the printed

record." This rule has been very properly taken advantage of by counsel for appellant, although they may have gone too far in omitting testimony. For example, where the competency of a wit-ness is questioned, parts of his cross-examination tending to show competency were omitted. Such omissions should be avoided and care taken that counsel for respondent be given no just cause for criticism of the manner in which the printed record is abridged. With these comments, we desire to say that this court welcomes the efforts of counsel to shorten the record. The process now author-ized by rule VIII is not resorted to as much as it should be to facilitate review and economize for litigants. The rule cannot fix definite limits of the shortening process which it authorizes. Pur-posely it did not attempt to do so. It leaves it to counsel and their traditional spirit of fairness and accommodation to shorten the printed records just as much as circumstances will permit without jeopardizing the arguments to be advanced here.

In this case, counsel for appellant have adopted the commendable practice of printing a supplemental record calculated to make good the omissions charged against the original. In that situation, there is no merit in the suggestion that we cannot consider the case fully and dispose even of the argument that the evidence does not warrant the decision below. At the time of the decision of Guthrie v. Hagen, 162 Minn. 447, 203 N. W. 216, our rules permitted an abridgment of the record only where the sufficiency of the evidence was not challenged. They have since been amended so as to permit an abridgment in all cases where circumstances permit. Still we shall decline ordinarily to examine the settled case in order to pass upon the sufficiency of the evidence. It has not been necessary to do so in this case.

■ There is support for the jury's finding of undue influence. The will left $100 to each of seven nieces and nephews, $500 to the church of which deceased was a member, $2,000 to Mrs. Berdina Engen, in whose home decedent had lived for some time, and the residue, said substantially to exceed $20,000, to "my good friend, Thore T. Johnson," the proponent. The will explains "the reason

for not giving my nephews and nieces any more is the fact that they have never done anything for me in any way. On the other hand Thore T. Johnson who has been my guardian for many years has done so much for me that I can never repay him for all his kindness." Proponent had taken some pay ("in part" according to his annual accounts) for his services as guardian. During the last two years of his guardianship, these payments reached $400. For "board, nursing and care" of his ward during eight months of 1925, proponent's wife was paid $800, and for the same service in 1926, she received $1,300.

In addition to being the legatee of the substantial residue, proponent was appointed executor. The will was executed March 11, 1925, in a bank at Lanesboro. Proponent brought decedent there for that purpose, first having consulted Mr. O. M. Habberstad, president of the bank. March 2, 1925, at the instance of proponent, Mr. Habberstad wrote one of proponent's counsel stating that proponent had advised him that the decedent "would like to make a will;" that proponent had also said that the decedent's "head and memory" were "O. K." He referred to the fact that a guardian had been appointed in 1909, and inquired whether a will "at this stage of the game" would be valid. He was promptly advised that the appointment of the guardian had not incapacitated decedent and that, mental capacity assumed, there was no legal objection to making one. He was advised further that the question of capacity very likely would be met, and it was suggested that "about the time of the making of the will you have some competent physician examine him so that he may testify" if needed.

There is evidence which, while it does not show any intentional wrongdoing by the proponent in the handling of decedent's funds in his hands as guardian, does indicate unauthorized loans of them (some unsecured) in very substantial sums and at low interest (4½ per cent in 1926) to his own children. Large amounts of them from time to time have been deposited by the proponent in Mr. Habberstad's bank. It also appears that proponent and several of his sons were heavily indebted to that bank at the time the will was drawn.

Notwithstanding dicta susceptible of a contrary construction in Fischer v. Sperl, 94 Minn. 421, 103 N. W. 502, and Tyner v. Varien, 97 Minn. 181, 106 N. W. 898, the burden of proof on the issue of undue influence was with the contestant and remained there to the end. In re Estate of Jernberg, 153 Minn. 458, 190 N. W. 990; In re Estate of Simmons, 156 Minn. 144, 194 N. W. 330; In re Estate of Keeley, 167 Minn. 120, 208 N. W. 535; In re Estate of Jenks, 164 Minn. 377, 205 N. W. 271. It is necessary that the circumstances relied on to show undue influence be such as "taken all together, point unmistakably to the fact that the mind of the testator was subjected to that of some other person, so that the will is that of the latter, and not of the former; mere ground of conjecture or guess is not enough." In re Will of Nelson, 39 Minn. 204, 206, 39 N. W. 143. But as observed in that connection, "from the nature of the case, the evidence of undue influence will generally be mainly circumstantial. It is not usually exercised openly, in the presence of others, so that it may be directly proved."

Direct evidence not being required and ordinarily unobtainable, the problem usually will be and here is to determine whether an affirmative finding has sufficient circumstantial evidence to support it. In the Jernberg case, 153 Minn. 458, 462, 190 N. W. 990, it is said that while "opportunity to exercise influence, or the existence of a confidential relationship between testator and beneficiary is not proof, standing alone," of undue influence, yet "when such opportunity arises out of confidential relationship, * * * and there are bequests to the one sustaining the confidential relation, and also active participation on his part in the preparation of the will, and acts of evasion on his part, these facts, coupled with singularity of provisions in the will and disinheritance of relatives, are indeed important circumstances to be considered in passing on the validity of the will and may sustain an inference of undue influence." The decision in the Simmons case, 156 Minn. 144, 194 N. W. 330, is to the same effect. In this case we have all these elements, except that possibly of "acts of evasion" on the part of proponent.

The utter helplessness of the decedent during some years before his death and his consequent dependence upon others, particularly proponent and the latter's wife, is a weighty factor. Undue influence, if in fact attempted by proponent, would have found an easy mark in the decedent, his susceptibility thereto being complete and plain. Proponent, while not actually present in ,the room where the will was drawn and signed, was near enough so that when the names of decedent's nephews and nieces were desired, he furnished them, the evidence indicating that he might have done so by handing to Mr. Habberstad a slip of paper upon which they had been written in advance. It is unfortunate for proponent that the evidence is open to the inference that, whatever else he did, he caused the will to be made and that his collaborator happened to be a principal officer of financial institutions whose claims, aggregating over $40,000 against proponent and his sons, would gain much assurance of ultimate collection from the legacy of over $20,000 made to proponent. In addition to the confidential relationship, there is the circumstance that if decedent had died intestate proponent might have been embarrassed in accounting for his guardianship because of the unauthorized loans he had made, several of them to his own sons. These considerations lead to the conclusion that the finding of undue influence is supported by the evidence.

■ Proceeding to consider alleged errors, we come first to one which excluded the opinion as to decedent's capacity of O. U. Habberstad, one of the three witnesses attesting the will. The objection was that the witness had not "shown himself competent to testify," and was sustained. That was error. Irrespective of foundation or without it, "the attesting witnesses to a will are competent to testify and give an opinion as to the testamentary capacity of the testator." Geraghty v. Kilroy, 103 Minn. 286, 114 N. W. 838. See also 6 Dunnell, Minn. Dig. (2 ed.) § 10211.

"There is one class of witnesses who, by long tradition, have been received to testify to mental capacity and may speak without being qualified in the foregoing manner, namely, persons attesting a will as witnesses. Long before any tests for the general subject were

devised, these persons were received, and the tradition seems everywhere to have kept its place." 1 Wigmore, Ev. (2 ed.) § 689.

But we cannot see that prejudice could have resulted. The conversation when the will was signed was in Norwegian, the decedent neither understanding nor speaking English. The witness understood but a little Norwegian and had never before met the decedent. He did not participate in the preparation of the will nor in the conversation attending its execution until called upon to act as a witness. So far as the transaction came under his observation, the witness testified in detail. The two other attesting witnesses (one being Mr. O. M. Habberstad, father of him whose opinion was excluded) testified not only as to all of the occurrences but also to their favorable opinion of the decedent's soundness of mind. There was much more to the same effect from witnesses better qualified by acquaintance with the decedent to express an opinion. That the opinion of this witness could have made any difference in view of these circumstances and the whole aspect of the case is beyond reasonable possibility. But if in that we should be mistaken, and the exclusion of the younger Habberstad's opinion be considered prejudicial to the proponent on the issue of capacity, there remains the special finding of undue influence. As to the latter the ruling was not error.

■ On the day the will was executed, the decedent was examined by Dr. F. A. Drake and Dr. R. F. Nannestad. Dr. Nannestad spoke Norwegian fluently. Dr. Drake spoke and understood it but little, so that the former, during the examination, acted to some extent as an interpreter, propounding to the decedent in Norwegian questions which Dr. Drake had asked in English and again rendering into English for Dr. Drake's benefit the decedent's answers. After that examination and before the trial, Dr. Nannestad departed this life, so Dr. Drake was the only witness as to what transpired at the examination and its results. Except as about to be stated, he testified fully. He was asked in conclusion whether there was anything in the condition of the decedent on March 11, 1925, to indicate that "his mental ability and fitness to direct his affairs had been

impaired," and his answer was an unqualified negative. He then answered with an equally emphatic affirmative the question whether in his opinion the decedent "was of sound mind and able to discuss his affairs on that day." He said also that he had never changed that opinion.

In his direct examination, Dr. Drake testified that he had understood some of the decedent's answers "but not all of them excepting as Dr. Nannestad translated them." Objection was then made to his giving any answers that were so translated to him, counsel for contestant going on to "ask that he be required to differentiate in the questions and answers which he understood, and those which Dr. Nannestad interpreted." The objection was sustained. It is the rule generally that "when two persons voluntarily agree upon a third to act as interpreter between them, the latter is to be regarded as the agent of each to translate and communicate what he says to the other, so that such other has a right to rely on the communication so made to him. It is the communication of the party through his agent." Miller v. Lathrop, 50 Minn. 91, 93, 52 N. W. 274. To the same effect are Commonwealth v. Vose, 157 Mass. 393, 32 N. E. 355, 17 L. R. A. 813; Meacham v. State, 45 Fla. 71, 33 So. 983, 110 A. S. R. 61; Terrapin v. Barker, 26 Okl. 93, 109 P. 931; Kelly v. Ning Yung Ben. Assn. 2 Cal. App. 460, 84 P. 321; Bonelli v. Burton, 61 Or. 429, 123 P. 37.

For respondent it is argued and it may be, that the rule admitting such evidence is restricted to cases where the interpreted conversation is that of the party to the action. 1 Wigmore, Ev. (2 ed.) 1076; 3 Id. 854. The argument for admissibility is well put in Commonwealth v. Vose, 157 Mass. 393, 394, 32 N. E. 355, 17 L. R. A. 813.

"When two persons who speak different languages and who cannot understand each other converse through an interpreter, they adopt a mode of communication in which they assume that the interpreter is trustworthy, and which makes his language presumptively their own. * * * The words of the interpreter * * * are adopted by both, and made a part of their conversation as much

as those which fall from their own lips. They cannot complain if the language of the interpreter is taken as their own by anyone who is interested in the conversation. Interpretation under such circumstances is prima facie to be deemed correct."

We do not now determine why that sound reasoning does not make for admissibility as to any conversation which comes fairly within the realm of judicial inquiry or how it can support a limitation of the rule to cases where the conversation is that of a party to the action. We need not decide whether, the conversation having been with one not a party to the action, its exclusion was error, for again the possibility of prejudice is negatived. That is because Dr. Drake's testimony as it stands is quite a full narrative of what took place. The important thing anyway was the doctor's opinion, and that was received. Here again it may be observed that the ruling, if it were error, could have no effect on the finding of undue influence.

■ As a result of their examination, Drs. Nannestad and Drake signed and swore to a written certificate that in their opinion the decedent was then "mentally fit and capable to direct the disposition of his affairs." This certificate was attached to the will but when offered in evidence was excluded. If such a statement, made out of court and beyond the test of cross-examination, is admissible on an issue of mental condition, it should be equally so wherever opinion evidence is competent. If such a statement from medical men is competent to show mental capacity, one from laymen, showing adequate foundation for their opinion, would be equally so. Obviously, any such statement is incompetent as hearsay. Here no witness had been discredited or so threatened with impeachment or contradiction that such a statement could be admitted for the purpose of supporting or rehabilitating the witness within the rule applied in Sullivan v. Minneapolis St. Ry. Co. 161 Minn. 45, 200 N. W. 922, and State v. Taran, 176 Minn. 175, 222 N. W. 906.

■ Reverend N. A. Giere, decedent's pastor, was a witness for contestant, and error is assigned upon the admission of his negative answer to a question whether, from his acquaintance with and ob-

servation of the decedent, "in your judgment he had sufficient mental capacity to grasp the extent of his property, * * * and also the claims of his only relatives, nephews and nieces, * * * was he able * * * to make a rational judgment and disposition of his property, with their natural claims in his mind?" Standing alone, the objection that the opinion of a qualified witness is asked upon the very issue and the ultimate one for decision is not sufficient. So long as the matter remains in the realm where opinion evidence is customarily resorted to, there is ordinarily no valid objection to permitting a person who has qualified himself to express an opinion upon the ultimate issue. That is a matter well left to the discretion of the trial judge. While in a will contest the opinion of a witness, lay or scientific, should not be asked as to the testator's capacity to make a valid will, there is certainly no objection to questions concerning his ability to comprehend his property and dispose of it understandingly. In re Will of Pinney, 27 Minn. 280, 6 N. W. 791, 7 N. W. 144.

His personal competency and the sufficiency of the preliminary examination as to foundation being beyond question, the objection now made to Reverend Giere's testimony goes only to the form in which he was permitted to express his opinion. The witness did not testify generally and at large as to mental capacity. He first testified to facts within his knowledge and then to his opinion based upon those facts. That is the conventional course in the case of lay witnesses to mental capacity or the lack of it. We pass without comment the other assignments of error challenging the admission of testimony from other lay witnesses. In no case did such rulings approach an abuse of discretion.

■ There was no error in admitting in evidence the "medical certificate" of decedent's death. After stating the date and hour of death, the certificate proceeds:

"The cause of death was as follows:
"Encephalomalacia [softening of the brain]
"Arterio sclerosis indefinite
"Contributory, Senility."

The admissibility of such a certificate to prove, prima facie, anything other than the fact of death is the subject of much judicial disagreement, as indicated by the majority and dissenting opinions in Bozicevich v. Kenilworth Merc. Co. 58 Utah, 458, 199 P. 406, and the annotation of the case in 17 A. L. R. 359. We are spared the necessity of passing upon that issue, for our statute, G. S. 1923, § 5366, makes a certified copy of a record of birth or death kept as required by the statute "prima facie evidence of the *fact* therein stated in all courts in this state." The opposition to the certificate as evidence of anything other than the fact of death is here based in the main upon the use in the statute of the singular "fact" rather than the plural "facts." But the derivation of the section shows that the word should be "facts" rather than "fact" and must be so read. The statute in its present substance came into our law as L. 1913, p. 862, c. 579. It had to do with "the collection, recording and preservation of vital statistics" and prescribed in detail what should be set forth in certificates of birth and death, and then § 13 made certified copies thereof "prima facie evidence of the *facts* therein stated in all courts in this state." G. S. 1913, § 4661. The same form was used when the statute was amended, in particulars not here important, in L. 1917, p. 329, c. 220, § 5. The "s" was dropped from "facts" when the statute was again amended, and again as to matters not now material by L. 1921, p. 319, c. 273. The several amendments actually intended and so made are indicated by italics, and doubtless were so shown as the bill (S. F. No. 372) was introduced and proceeded on its way to adoption. If the legislature, in framing and passing the 1921 amendment, had intended to limit to the one fact of death the probative effect of a death certificate, they surely would not have adopted so doubtful a method as the mere dropping of one letter, or a mere change from plural to singular, but would have made the limitation explicitly to the one fact intended. It is not uncommon, where necessary to give effect to the legislative intent, that "words importing the singular only will be applied to the plural of persons and things." 36 Cyc. 1123.

The other assignments of error cannot be discussed in detail. In the main they challenge the admission of evidence showing the conduct of proponent as guardian of the decedent, what he had been paid for the latter's care, and the indebtedness of himself and certain of his children to the bank of which the senior Habberstad was president. Much if not all of this evidence was collateral, but it was plainly within the discretion of the trial judge to admit it.

Upon the issue of undue influence, as in that of fraud accomplished by deceit, the range of inquiry is necessarily wide. It was not improper to show the proponent's relation to the estate which he had administered as guardian and most of which he would have taken under the will. Neither was it error, under the circumstances already mentioned, to prove the interest of the Habberstad bank in any agency so potent as the will might have been as assurance of the collection of large claims owing to the bank. Moreover, the senior Habberstad was so important a witness for proponent and his relation to the will and its execution that it was not improper to show fully how he stood to gain from it—not only as of its date but also as of that of the trial. The amounts paid for the care of the decedent are given relevancy by testimony for proponent indicating that during the periods for which the payments were made the decedent was in fairly good mental and physical health and therefore, inferentially, not in need of much care.

In case of so sharp an issue of fact, particularly one which defies solution by direct evidence, the trial judge has a wide discretion in admitting evidence otherwise competent which fairly tends to support one side or the other. Certain statements made by counsel for contestant in his argument to the jury ought not to have been made, but in view of prompt remedial action by the court, they present no ground for a new trial.

Order affirmed.