## IN RE ESTATE OF NATHAN LANDE.[1]

May 22, 1931.

No. 28,427.

[1]Reported in 236 N. W. 705.

420

*Patrick J. Ryan,* for appellant.
*Silver & Ruttenberg* and *A. B. Christofferson,* for respondent.

LORING, J.

The will of Nathan Lande, dated November 9, 1928, offered by his brother William B. Lande, was denied admission to probate by the probate court of Ramsey county, which found as facts that the alleged testator did not have testamentary capacity to make a will, that it was not duly executed, and that at the time of its purported execution the alleged testator was unduly influenced by the proponent and sole beneficiary, William B. Lande. Upon appeal the district court found that all the findings of fact made by the probate court were true and affirmed the order denying the will admission to probate. The proponent has appealed to this court and contends that there is no credible evidence supporting the findings of the lower court.

In behalf of the proponent, the lawyer (not his present counsel) and his stenographer who drew the will testified that they prepared the will and on November 10, 1928, went to the apartment in which Nathan Lande was then confined with illness, and that he there duly executed and declared the will in question. Nathan Lande was a single man, and his heirs, in the event of his intestacy, were his two brothers, Ike Lande and Dr. William B. Lande, the proponent. At the time of the making of the will Ike was in California and had been in business there for a year or two. Dr. Lande was in St. Paul and was assuming to look after Nathan during his illness.

It appears that for some weeks prior to his death, which occurred on November 17, 1928, Nathan was aware that he was afflicted with cancer and that he was not likely to live long. According to his lawyer's testimony, he had requested that his will be made out leaving all his property to Dr. Lande and excluding Ike from inheritance. The will which proponent claims was executed on the tenth, though dated on the ninth, so provides. It is the contention of the respondent, Ike Lande, that the purported will was not executed on the tenth but that the lawyer and his stenographer attempted to have it executed on the succeeding Saturday, which was the 17th of November, the day on which Nathan died. In support of this theory they adduced testimony from the manager of the Biltmore apartment, which Nathan owned and where he had his room. This lady had an office on the main floor immediately across the hall from the room in which Nathan Lande was confined, and the arrangement was such that she could see if anyone went into Lande's room while she was in the office. On the tenth of November her lunch hour was from 12 to one, and at all other times she claims to have been in the office. She asserted that she did not see anything of the lawyer or stenographer on that day. They said that they closed their office at one o'clock on Saturday and that immediately after that they took the will up to the Biltmore to be executed. There was some variation in their assertions as to the time when they were at Lande's room, but upon the whole record we think it was a question of fact for the trial court to determine whether or not they were there on the tenth at all. That they were not there at that time is indicated by the testimony of another witness that on the 17th of November they were endeavoring to get Nathan to execute a will. They claim that the document or documents presented to Nathan on the 17th were an affidavit and answer in connection with some legal proceedings then pending in court. But on the record the court was justified in finding that they were then endeavoring to get the plaintiff to execute a will. Nathan died on the 17th, and at the time they were there he was scarcely conscious and admittedly in no condition whatever to

execute a testamentary document. He was then and had been for some days heavily dosed with morphine and other like drugs.

We think the record supports the conclusion that the purported will was not executed on the tenth but that an attempt was made to have it executed on the 17th. Certainly at that time the testator did not have the mental capacity to make a will.

■ It was also contended by the respondent and found by the court that the will was procured by undue influence on the part of Dr. Lande, by which he substituted his own will for that of Nathan. In our opinion this finding is supported by the evidence. Dr. Lande had been taking Nathan to a physician from whom he could obtain radium treatments, but Nathan was dissatisfied with the results of those treatments and through his manager at the Biltmore procured another doctor, who at once directed that he be hospitalized. Accordingly he was taken to the Swedish Hospital in Minneapolis. He left instructions with his manager that Dr. Lande was not to be told where he was. This occurred on November 5. At that time Nathan Lande exhibited symptoms which indicated to the doctor that he had been taking overdoses of morphine, which he said that he had gotten from his brother Dr. Lande. It seems that Dr. Lande did not have a permit to prescribe drugs of that character and had to get them through another doctor. He had been confined in a state institution on account of overindulgence in drugs, so that he was quite familiar with the effects of such drugs as morphine. As shown by the record, an overdose of morphine is "destructive to the mental condition. It shatters reason and dethrones the will."

Dr. Lande, through the assistance of detectives, discovered on the seventh where Nathan was and immediately had him brought back to the apartment in the Biltmore, where he gave instructions that no other doctor was to see him nor was any other person to be allowed to enter the room. At this time Nathan stated to one witness: "My brother came and got me. He will do anything to gain his own ends, and therefore I have got to do just what he tells me to do." Dr. Lande assumed full charge and even brought Nathan such food as he thought he should have.

The trial court was justified in finding that Nathan was suffering from the administration of overdoses of morphine for a considerable time prior to the tenth of November, and that after the seventh of November until his death he was under the control and influence of his brother Dr. Lande to the exclusion of everyone else. It will be observed that this covers the time when the proponent asserts that the will was executed as well as the time when the respondent claimed that the alleged attempt was made to get Nathan to execute the will. There are other details in the evidence which support the findings of the courts below. See In re Estate of Olson, 176 Minn. 360-366, 223 N. W. 677. Dr. Lande was in financial straits. He had engaged the same lawyer who drew the will to put him through bankruptcy. He had avoided sending word of Nathan's illness to Ike, whom according to one witness Nathan wanted to have half his property. Altogether his actions justified the trial court in finding that he substituted his own will for that of the testator.

The order appealed from is affirmed.