**KRUG v. MUTUAL BEN. HEALTH & ACCIDENT ASS'N.**

**SAME v. BANKERS LIFE CO.**

**Nos. 11876, 11877.**

Circuit Court of Appeals, Eighth Circuit.

June 9, 1941.

Rehearing Denied July 2, 1941.

W. F. Woodruff, of Kansas City, Mo. (Spencer A. Gard, of Kansas City, Mo., on the brief), for appellant.

Robert E. Coleberd, of Kansas City, Mo. (William C. Michaels and Roy P. Swanson, both of Kansas City, Mo., Philip E. Horan, of Omaha, Neb., and Michaels, Blackmar, Newkirk, Eager & Swanson, of Kansas City, Mo., on the brief), for appellee Mutual Ben. Health & Accident Ass'n.

James W. Broaddus, of Kansas City, Mo. (Frank W. McAllister and G. W. Humphrey, both of Kansas City, Mo., and J. P. Lorentzen, of Des Moines, Iowa, on the brief), for appellee Bankers Life Co.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

These appeals are from a judgment for the defendants (appellees) entered upon verdicts of a jury in two actions brought to recover accidental death benefits under two policies of insurance issued to Fred H. Krug, who died January 1, 1938. The cases were tried together and come here upon a single record.

The insured at the time of his death was a resident of Russell, Kansas. He was fifty-two years of age, and until his last illness had been in apparent good health. He died at a hospital in Ellsworth, Kansas, and the testimony indicates that his death was due to hemorrhage caused by a blood condition which resulted either from a ruptured spleen or from a disease known as "leukemia". The plaintiff is the insured's daughter and the assignee of her mother, the beneficiary named in the policies. It was the plaintiff's claim that the insured in the evening of December 21, 1937, had a fall caused by the breaking of a stepladder which he was using in removing electric light bulbs from Christmas decorations in front of his home; that the fall caused a rupture of his spleen;

and that that, in turn, caused the blood condition which produced the hemorrhage which resulted in his death. Plaintiff's testimony tended to support her claim. No one saw the insured fall, and the evidence that he fell was circumstantial. The claim of the defendants was that the insured did not die as the result of a fall, and that he died of a cerebral hemorrhage due to "leukemia". The death certificate was to that effect, and the evidence of the defendants upon the trial supported that theory. The jury, by its verdicts and answers to written interrogatories, determined that the insured did not fall from a ladder on December 21, 1937, and accidentally injure himself; that he did not die as the result of such an injury; that he had "leukemia" and that it was the cause of his death.

The plaintiff challenges certain of the court's rulings upon evidence and parts of its instructions to the jury.

■ The rulings upon evidence of which the plaintiff complains relate mainly to the exclusion, as hearsay, of statements made by the insured to others as to having sustained a fall. The evidence showed that after December 21, 1937, the insured had discolorations upon his body, which looked like bruises and abrasions. The plaintiff offered to prove by Lydia King, the widow of the insured, that when he went to the hospital on December 27, 1937, and was being examined by his doctor, the doctor asked the insured what caused these discolorations, and was told by him that, a few days before, he had been on a ladder working on Christmas lights, that the ladder broke, and that he fell. The objection of the defendants to this testimony, as hearsay, was sustained. The court's ruling was in accord with the rule announced by the Supreme Court of the United States, and by this court and other federal courts, and by the courts of Missouri. [1]

[1] Northern Pacific R. Co. v. Urlin, 158 U.S. 271, 274, 275, 15 S.Ct. 840, 39 L. Ed. 977; Boston & Albany R. Co. v. O'Reilly, 158 U.S. 334, 337, 15 S.Ct. 830, 39 L.Ed. 1006; London Guarantee & Accident Co. v. Woelfle. 8 Cir., 83 F.2d 325, 335; Ætna Life Ins. Co. v. Quinley, 8 Cir., 87 F.2d 732, 733, 734; Delaware, L. & W. R. Co. v. Roalefs, 3 Cir., 70 F. 21, 22; Chicago Railways Co. v. Kramer, 7 Cir., 234 F. 245, 251; Flannagan v. Provident Life & Accident Ins. Co., 4 Cir., 22 F.2d 136, 139, 140; Hartford Accident & Indemnity Co. v. Baugh, 5 Cir., 87 F.2d 240, 241; Winningham v. Travelers Ins. Co., 5 Cir., 93 F.2d 520, 521; Hartford Accident & Indemnity Co. v. Carter, 5 Cir., 110 F. 2d 355, 356; Brady v. Springfield Traction Co., 140 Mo.App. 421, 124 S.W. 1070, 1073; Freeman v. Loyal Protective Ins. Co., 196 Mo.App. 383, 195 S.W. 545, 548; Hutchinson v. Missouri Pac. Ry. Co., Mo.App., 288 S.W. 91, 94; Kinchlow v. Kansas City, K. V. & W. Ry. Co., Mo.Sup., 264 S.W. 416, 421; Magill v. Boatmen's Bank, 288 Mo. 489, 232 S.W. 448, 451. Compare, Meancy v. United States, 2 Cir., 112 F.2d 538, 539, 540.

■ It is, of course, apparent that if the court below did not err in excluding the testimony of Mrs. Krug as to statements made by the insured to his doctor relative to the alleged fall from the stepladder, it did not err in excluding testimony as to statements made by the insured to his wife and brother on December 22, and to his daughter on December 23, 1937, and the statement which was incorporated in the Ellsworth Hospital records, to the effect that "while decorating a Christmas tree Xmas week was up on ladder which gave way with him, bruised." The plaintiff urges that the rule followed by the trial court in excluding these statements is unduly harsh, and that such statements should be regarded as exceptions to the hearsay rule. She calls attention to the report of the "Committee on Improvements in the Law of Evidence" of the American Bar Association, found in the 1938 Proceedings of that Association, at pages 584, 585, and to the comments of Professor Wigmore found in Sections 1427 and 1576 of Wigmore on Evidence, Third Edition. It is conceivable that the hearsay rule may in the future be so relaxed that statements of a deceased person made under circumstances negativing any intent to fabricate evidence will be received as proof of the facts recited, but the present rule that such statements are (with certain exceptions not pertinent here) inadmissible has been so long and firmly established that it would seem that any change should be brought about by legislation, as it has been in some states, rather than by the courts. We would not be justified in reversing the court below for following our rulings.

■ The plaintiff argues that the court erred in sustaining an objection to the following question asked the plaintiff, in rebuttal: "Q. Now, I want to ask, Miss Krug, again, at the time your father showed you the discolorations on his body at noon of the day you returned home for the Christmas holidays, 1937, did he tell you how he got those discolorations on his body?"

The plaintiff contends that she was entitled to show that the insured did not remain silent with respect to the discolorations on his body, and argues that, because she was not permitted to show that he said anything with respect to them, the jury was justified in assuming that he had said nothing about them. In other words, the plaintiff claims that it was important that she prove that the insured said something about the origin of these discolorations, to prevent the jury from drawing unwarranted inferences. We think there is no merit in this contention. No testimony was introduced by the defendants to the effect that the insured had remained silent about the alleged fall from the stepladder, and it is not conceivable that the jury received any false impression with respect to the reason that there was no testimony explaining the insured's version of the origin of the discolorations. Throughout the entire trial the plaintiff was endeavoring to introduce statements made by the insured as to a fall, which were objected to as hearsay and ruled out by the court, and it was obvious to everyone why such evidence could not be received. While it is probably true that it would not have been error to have permitted the plaintiff and the other witnesses who were asked whether the insured explained how he received the discolorations on his body, to answer the question "yes" or "no", it is clear that their answers would not have had any tendency to prove or disprove any issue in the case. The court was fully advised that the purpose of these questions was to lay the foundation for the offer of hearsay testimony, and we think it did not err in sustaining objections to such questions.

■ The plaintiff also complains because John Sirosky, who furnished the ladder which is alleged to have broken while the insured was using it, was not permitted to testify that on December 23, 1937, the insured told Sirosky that "he guessed he would have to buy us a new stepladder, because he broke that one". What the insured said to Sirosky about breaking the ladder was hearsay evidence of the fact that the insured did break the ladder, and was incompetent to prove that fact and tended to prove or disprove no other issue in the case.

The next contention of the plaintiff arises out of this situation: Dr. O'Donnell was the insured's attending physician. As required by the laws of Kansas, he made out that part of the "Standard Certificate of Death" denominated "Medical Certificate of Death". The certificate was filed with the State Registrar of Kansas on January 4, 1938. The Medical Certificate of Death stated that the doctor attended the insured from December 27, 1937, to January 1, 1938; that: "The principal cause of death and related causes of importance in order of onset were as follows: Cerebral Hem-

orrhage. Date of onset 1–1–38. Contributory causes of importance not related to principal cause: Leukemia. Date of onset 1937?" The certificate contained a part numbered 23, which read as follows:

"If death was due to external causes (violence) fill in also the following:
Accident, suicide or homicide? ————
Date of Injury, ————, 19—.
Where did injury occur? ————
Specify whether injury occurred in industry, in home, or in public place. ————
Manner of injury ————
Nature of injury ————."

Dr. O'Donnell did not fill out any of this part of the Medical Certificate of Death. The defendants introduced in evidence a certified copy of the Certificate of Death. The General Statutes of Kansas 1935, 65-144, makes such a copy "prima facie evidence in all courts and places of the facts stated therein." In rebuttal, the plaintiff offered in evidence an "Attending Physician's Certificate" executed by Dr. O'Donnell on January 5, 1938, in connection with proofs of the death of the insured, on a form of The Mutual Life Insurance Company of New York, in which the doctor stated that the principal cause of death was "Cerebral hemorrhage", and that the contributory cause of importance was "Leukemia, date of onset uncertain." This certificate contained the following: "If accident or external injury contributed in any way to insured's death, give full details." In answer to this statement, the doctor wrote: "Had fall and bruised leg 2 weeks before. Uncertain if it had any bearing." The plaintiff offered this answer of the doctor as a contradiction, amplification or explanation of the Medical Certificate of Death, and stated to the court that the death certificate indicated that Dr. O'Donnell claimed to know nothing of any accident and also indicated that the happening of an accident was immaterial, whereas the doctor's statement contained in the Attending Physician's Certificate of January 5, 1938, furnished to The Mutual Life Insurance Company of New York, showed that he was advised of an accident, but was uncertain whether it had any bearing upon the insured's death. The court below expressed the opinion that the death certificate was made admissible by statute as a public record, and that, while the facts stated in it were subject to rebuttal, they could not be rebutted or explained by the hearsay statements of the doctor who signed the Medical Certificate of Death.

We think that the court below ruled correctly in excluding the statements of Dr. O'Donnell contained in the Attending Physician's Certificate signed by him on January 5, 1938. The doctor was not a witness upon the trial, and his statements in the death certificate were not to be regarded as his testimony, but merely as a part of a public record which was admissible because the law made it prima facie evidence of the facts which it recited. If the defendants had offered the certificate of death as being Dr. O'Donnell's testimony as to the cause of death, it would have been incompetent for that purpose. It was admissible only for what it was,—a public record reciting the fact and cause of death.[2] While the death certificate was subject to rebuttal and to explanation,[3] we are satisfied that it could not be impeached, amended or ex-

[2] Cropper v. Titanium Pigment Co., 8 Cir., 47 F.2d 1038, 1044, 1045, 78 A.L.R. 737; Brown v. Maryland Casualty Co., 8 Cir., 55 F.2d 159, 161; New York Life Ins. Co. v. Anderson, 8 Cir., 66 F.2d 705, 706; Simpson v. Wells, 292 Mo. 301, 237 S.W. 520, 525, 526; Williams v. Mutual Life of Illinois, Mo.App., 283 S.W. 64, 65; Loughlin v. Marr-Bridger Grocer Co., Mo.App., 10 S.W. 2d 75, 82; Key v. Cosmopolitan Life, Health & Accident Ins. Co., Mo.App., 102 S.W.2d 797, 799; Washington Fidelity Nat. Ins. Co. v. Anderson, 187 Ark. 974, 63 S.W.2d 535, 537; Healy v. Hoy, 115 Minn. 321, 132 N.W. 208, 209; In re Estate of Olson, 176 Minn. 360, 223 N.W. 677, 680, 681; Milliren v. Federal Life Ins. Co., 185 Minn. 614, 242 N.W. 290, 291, 292; 20 Am.Jur. 872,

873, § 1034; Bozicevich v. Kenilworth Mercantile Co., 58 Utah 458, 199 P. 406, 17 A.L.R. 359; Branford Trust Co. v. Prudential Ins. Co., 102 Conn. 481, 129 A. 379, 42 A.L.R. 1454. See and compare: United States v. Johnson, 8 Cir., 72 F.2d 614, 617; Morton v. Equitable Life Ins. Co., 218 Iowa 846, 254 N.W. 325, 328, 96 A.L.R. 315; Omaha & C. B. St. Ry. Co. v. Johnson, 109 Neb. 526, 191 N.W. 691.

[3] Greenbaum v. Columbian Nat. Life Ins. Co., 2 Cir., 62 F.2d 56, 58; Krapp v. Metropolitan Life Ins. Co., 143 Mich. 369, 106 N.W. 1107, 1109, 114 Am.St. Rep. 651; Harrington v. Interstate Business Men's Accident Ass'n, 232 Mich. 101, 205 N.W. 116, 119; McGinty v. Brotherhood of Railway Trainmen, 166 Wis. 83, 164 N.W. 249, 253;

plained by the hearsay statements of those who were required by law to make and file it.[4] It was not a record of Dr. O'Donnell, but a record of the State of Kansas. Had Dr. O'Donnell testified at the trial that he was not told by the insured of any accident, or that he was certain that no accident had contributed to the death of the insured, his (the doctor's) certificate of January 5, 1938, to The Mutual Life Insurance Company of New York could have been used to impeach him.

Plaintiff has directed our attention to her case against The Mutual Life Insurance Company of New York, tried in the Circuit Court of Jackson County, Missouri, which is said to have involved the same issues as were tried in the cases at bar and in which she prevailed. It appears that the state trial court in that case admitted the certificate of Dr. O'Donnell to the Insurance Company which the court below rejected in these cases. That case was appealed to the Kansas City Court of Appeals (Krug v. Mutual Life Ins. Co. of New York, 149 S.W.2d 393), but the admissibility of the certificate of January 5, 1938, as impeachment or explanation of the death certificate was not considered or ruled upon by that court.

 The plaintiff complains of the court's instructions respecting the burden of proof. The exceptions which she took to the charge of the court in this regard are as follows: "Plaintiff would like the Court to charge the jury that in order to sustain the burden of proof all that is necessary is for plaintiff to present evidence that is convincing."

And: "My thought is that the charge contains a little more emphasis than is essential or quite proper on the point that plaintiff's evidence must overbalance. I don't think the charge indicates sufficiently to the jury that what we mean by the evidence that the plaintiff must present is just evidence that is reasonably convincing."

Rule 51 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The plaintiff failed to distinctly point out to the court below the instructions as to the burden of proof of which she now complains in this court. Since her present criticisms of the instructions relating to the burden of proof were not presented in an understandable way to the court below, they cannot be considered by this court.[5] Rule 51 also precludes our considering plaintiff's contention that the court below should have charged the jury that plaintiff could recover if it found that the disease which resulted in the insured's death was caused by injury resulting from the alleged fall from the stepladder.

It is our conclusion that the plaintiff has failed to point out any reversible error in the proceedings in the court below. The judgment appealed from is affirmed.

---

Milliren v. Federal Life Ins. Co., 185 Minn. 614, 242 N.W. 290, 292; Hardy v. State Mut. Ben. Soc., 111 Pa.Super. 336, 170 A. 704, 706; Bozicevich v. Kenilworth Mercantile Co., 58 Utah 458, 199 P. 406, 17 A.L.R. 359; 20 Am.Jur. 872–873, § 1034.

[4] See and compare, In re Estate of Olson, 176 Minn. 360, 369, 223 N.W. 677, 681.

[5] Lynch v. Oregon Lumber Co., 9 Cir., 108 F.2d 283, 286; Hupp Motor Car Corporation v. Wadsworth, 6 Cir., 113 F.2d 827, 829; Standard Oil Co. v. Burleson, 5 Cir., 117 F.2d 412, 414; Baltimore & O. R. R. v. Corbin, App. D.C., 118 F.2d 9, 11.