LOUISE BRIESENMEISTER v. THE SUPREME LODGE
KNIGHTS OF PYTHIAS OF THE WORLD.

*Pleading—Notice of special matter of defense—Life insurance—
Application—Evidence—Physicians—Privileged com-
munications—Waiver.*

81   525·
85    48.

81   525
106   451

81   525
113   178

81   525|
845ᴺᵂ 977|
129   519|

81   525
845ᴺᵂ 977
132   ²675
f133  ²680

81   525|
136   399

81   525|
139   ²227|

81   525|
143   ¹294|

1. How. Stat. § 7516, which prohibits a physician from disclosing
   any information necessary to enable him to prescribe for a
   patient which he may have acquired in attending such patient
   in his professional character, is construed as follows:

   *a*—A physician may testify that he is the family physician of
   a patient, and to the number and dates of his professional vis-
   its.

   *b*—The assignee of a beneficiary in an insurance certificate is
   entitled to raise the question of privilege under the statute;
   citing *Edington v. Ins. Co.*, 67 N. Y. 185.

   *c*—The statements in the proofs of death furnished by the
   beneficiary are a waiver of the statutory privilege *only* in so
   far as such statements refer to the subject-matter claimed as
   privileged.

   *d*—Such privilege is a *personal* one, and must be claimed
   before the testimony is admitted, or it is waived.

   *e*—Such waiver will not prevent the party from claiming the
   privilege on a second trial of the case.

2. The sole test of the sufficiency of a notice of special matter of
   defense is that it shall apprise the plaintiff of the *nature* of
   the defense relied on, so that he may be prepared to meet it,
   and to avoid surprise on the trial; citing *Rosenbury v. Angell*,
   6 Mich. 508; *M'Hardy v. Wadsworth*, 8 Id. 349; *Cresinger v.
   Reed*, 25 Id. 450; *Ins. Co. v. Crampton*, 43 Id. 421.

   So *held*, where, in a suit by a beneficiary upon a benefit cer-
   tificate, the defendant gave notice that it would show on the
   trial that the member to whom the certificate was issued made
   false statements in his application therefor, and to the medical
   examiner, and concealed material facts concerning his health
   and life expectancy, and that the medical certificate was pro-
   cured by falsehood, fraud, and deceit, and was void.   And it is
   held that the notice is very general, but that it falls within the
   rule above stated; and, inasmuch as the record contains no
   intimation that the plaintiff was surprised by the testimony
   introduced under it, the notice will be considered sufficient.

3. An *unanswered* question in an application for life insurance raises no inference for or against the applicant.

Error to Wayne. (Hosmer, J.) Argued June 4, 1890. Decided June 27, 1890.

*Assumpsit* on a benefit certificate. Defendant brings error. Reversed. The facts are stated in the opinion.

*Glidden & Beckwith,* for appellant, contended:

1. Plaintiff could not raise the question of privilege. She occupies no different position than if she were a creditor having a beneficial interest in the life insured. The statutory privilege is personal, for the benefit of the patient, or, at most, of his legal representatives; citing *Fraser v. Jennison,* 42 Mich. 206; *Scripps v. Foster,* 41 Id. 742; *Railroad Co. v. Martin,* Id. 667.

2. The privilege was waived,—*first,* by the proofs of death filed with defendant, and introduced in evidence, and, *second,* by permitting the testimony to be given without objection; citing *McKinney v. Railroad Co.,* 104 N. Y. 352; and the right of waiver must be as broad as the privilege; citing *Blair v. Railroad Co.,* 89 Mo. 334; *Fraser v. Jennison,* 42 Mich. 206.

3. So much of the testimony of Dr. Inglis as showed that he attended the insured before the application, and that he was then attending him, was admissible to contradict the statement in the application that the applicant had no family physician, and was never sick; citing *Brown v. Ins. Co.,* 65 Mich. 306.

*William Look* and *H. F. Chipman,* for plaintiff, contended:

1. On the question of privilege, counsel cited *Briggs v. Briggs,* 20 Mich. 41; *Storrs v. Scougale,* 48 Id. 395.

2. In support of the claim that the notice was insufficient, counsel cited *Bailey v. Pub. Co.,* 40 Mich. 254; *Waldo v. Waldo,* 52 Id. 97; *Cresinger v. Reed,* 25 Id. 450; *Rosenbury v. Angell,* 6 Id. 508; *M'Hardy v. Wadsworth,* 8 Id. 349.

CHAMPLIN, C. J. This is an action brought by the beneficiary named in a benefit certificate issued by the Endowment Rank of the Knights of Pythias on September 21, 1887.

Herman Briesenmeister made application for member-

ship in the Endowment Rank on August 16, 1887, and was examined and admitted to membership, and died on February 22, 1888. He named his wife as beneficiary, who is the plaintiff in this suit. After her husband's death, she presented a claim for the amount of the endowment, and also furnished the affidavits and certificates of proof of death, burial, and standing in subordinate lodge and section, together with the necessary legal papers for the proper payment of the claim. Among the affidavits was that of Davis Henderson, M. D., who deposed that he was a regular practicing physician; that he had known Herman Briesenmeister about two months; that the cause of his death was *endocarditis* complicated with dropsy; that the duration of his last illness was about six months; that the complications and ultimate result upon prime cause of death was the above-named dropsy, which he considered as a cause, together with valvular disease of the heart; that he knew of no habits of deceased, or mode of life, which predisposed him to the disease, or the complications thereof, which resulted in his death. The following questions and answer were contained in the affidavit:

"*Q.* Did the deceased use intoxicating liquors? If so, to what extent, and what was the effect thereof upon the cause of death?
"*A.* None."

The supreme lodge refused to pay the claim, and this suit was brought; and, under the plea of the general issue, defendant gave notice that it would insist in its defense that said benefit certificate was issued under and by reason of a certain application made by Briesenmeister, which was a part of the contract, wherein it was agreed that any untrue statement in said application or to the medical examiner, or any concealment of facts touching the health or expectancy of life of Briesenmeister, should

work a forfeiture of all the rights of said Briesenmeister, his heirs and beneficiaries, under and by virtue of said certificate, and that said Briesenmeister willfully, and for the purpose of procuring said certificate, made false and untrue statements in said application and to the medical examiner, and concealed material facts concerning his health and expectancy of life, and that said medical certificate was procured by falsehood, and fraud, and deceit, and was void.

Upon the trial the application was introduced in evidence on the part of the defendant without objection, from which the following interrogatories and answers signed by the applicant appear:

" *Q.* Have you ever been predisposed to or had any of the following diseases: Apoplexy, asthma, bronchitis or habitual cough, disease of the heart?
" *A.* No.
" *Q.* Have you ever had, or have you now, any other disease or infirmity than above mentioned?
" *A.* No.
" *Q.* Are you aware of anything regarding your health, habits, circumstances, or family history, not already stated, that should be known in order to fairly estimate the risk upon your life?
" *A.* No.
" *Q.* Have you ever been liable to cough, difficulty of breathing, habitual expectoration, pain in the chest, or any other pulmonary symptoms, or palpitation of the heart?
" *A.* No.
" *Q.* Are you willing that your family physician should, in the interest of the Endowment Rank, give it all the information in his power regarding your physical condition, habits, and general health?
" *A.* Yes.
" *Q.* Give name and address of your family physician.
" *A.* Has none.    Never was sick."

The proof of death was also read in evidence by counsel for defendant.    Dr. David Inglis was then produced and sworn in behalf of defendant, and testified as follows:

"I reside in Detroit. Am a practicing physician. Have practiced my profession about fifteen years. Was practicing my profession in the city of Detroit, in the month of August, 1887, and have been since that date. I knew Herman Briesenmeister during his life-time. During the month of August, 1887, I was called to see Mr. Briesenmeister professionally, also in the month of July. The first record I have of being called to see Mr. Briesenmeister was the 27th of January, 1887. I treated him at that time for nervousness, the result, as I believe, of using too much alcohol. I believe at that time I made a diagnosis of his physical condition entirely. I did not discover any disease aside from that I mentioned. I was there to see him on the 17th of February. At that date he was in the same condition. I urged him to give up the use of alcohol. He was getting himself into a state of extreme nervousness at that time, and I urged him that he should swear off, and I believe he did. And then, in February, I found that he had been using alcohol again, and I gave him another talking to; and then I saw him no more, as far as my recollection goes, or as far as my notes go, until the 26th of July. I then found that he was suffering from heart difficulty.

"I don't know that I can tell you better what sort of physical condition he was in than by giving you the memorandum that I made on the 3d of August, about a week later. I have that memorandum, just as I made it on that day. It was that he was suffering from palpitation,—the cardiac area increased; that means to say that the sack inclosing the heart—the size of the heart—was larger than natural. He was suffering from very great shortness of breath. The trembling was less; that is to say, this nervous trembling that he had before. As far as my memory serves me, that was about the condition I found on the 26th of July. He was confined to his house at that time. Sometimes he was in bed, and sometimes around the house. He was able to work in this way. I have had this experience with him about that time,—that I would go to see him, and find that he had gone to the shop. In other words, while he suffered from shortness of breath, he was a man of a good deal of endurance, and did not seem to comprehend his own condition; and the result was that I have gone on some occasions, and found that he was not at home. After

that I treated him right along, from that time till—well, the last record that I have here was the 31st of January, 1888. From the 26th day of July, when I diagnosed his case as heart disease, until the 31st of January, 1888, the heart difficulty continued more or less uniformly, and gradually there set in a condition of dropsy. I am not able to give you the date when that dropsical condition set in, but it was some time afterwards.

"*Q.* Was that dropsical condition due to the difficulty of the heart?

"*A.* I think it was.

"*Mr. Chipman.* Objected to as incompetent and irrelevant, and also on the ground of privilege, and also on the ground that the plea, and the notice under the plea, is not sufficiently specific to permit them to put this testimony in."

The court sustained the objection upon the ground of privilege, but did not pass upon the sufficiency of the notice, and this branch of the objection is insisted upon here. The witness was then asked the following hypothetical question:

"*Q.* Doctor, if you find a patient suffering from difficult breathing and palpitation of the heart on a given day, will that patient necessarily be conscious of those difficulties?

"*A.* Yes, sir. I said yes, but the yes ought to be qualified. It is entirely possible for a person to be entirely unconscious, and still be in a state of palpitation and difficult breathing. A man might lie in a state of stupor, and not be conscious of those conditions.

"*Q.* But, if he were not in a state of stupor, would he be conscious of those difficulties?

"*A.* O, yes."

He further testified:

"I have attended other members of his family. I had been his family physician. I attended Mr. Briesenmeister from the 26th of July up to the 31st of January."

After cross-examining the witness, counsel for plaintiff asked that all of the testimony of Dr. Inglis be stricken out, except the hypothetical question, under the prohibi-

tion of the statute. The court made the following ruling:

"The evidence may be stricken out, because the physician cannot be allowed to give evidence. All the testimony of the doctor except the one hypothetical question may be stricken out, except the fact that he was a physician."

The statute under which this ruling of the court was had reads as follows:

"No person duly authorized to practice physic or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon." How. Stat. § 7516.

This statute covers all information which Dr. Inglis acquired by observation, while in attendance upon Mr. Briesenmeister, of his condition or ailments, which in any manner enabled him to prescribe for him, as well as to communications made to him by his patient. *Briggs v. Briggs*, 20 Mich. 34. But the statute does not cover information or knowledge acquired which is not necessary to enable the physician to prescribe for his patient, and which information or knowledge was not communicated to him by his patient. All disclosures by the patient to his physician respecting his ailments are privileged, whether they are necessary to enable the doctor to prescribe for him as a physician or not. Thus in *Scripps v. Foster*, 41 Mich. 748, it was held that the object of the statute is to prevent abuse of the confidential relations existing between the physician and his patient, and is for the protection of the latter, and, where the relation is such that no confidence is reposed, there is none to be abused. *People v. Glover*, 71 Mich. 303.

In *Brown v. Ins. Co.*, 65 Mich. 306, Dr. Kinney was

the company's physician who examined the applicant at the time the application was made for insurance, and it was held that he might testify to what the applicant told him as to her physical condition. In the case last cited the applicant, in answer to questions contained in the application, said that she was last sick nine or ten years ago, of typhoid fever, and was attended by doctor Henderson. It was held that Dr. Henderson might be inquired of as to whether or not he had attended the applicant, or treated her for typhoid fever; that such testimony was not in the prohibition of the statute, as the fact of treatment or non-treatment for this disease in this case was not a matter of privilege upon which the plaintiff could insist. And it was also held that false answers to the questions contained in the application avoided the policy, and the jury should have been so instructed.

The fact that a doctor is the family physician of the insured, and the fact that he attended the insured professionally, and the dates and number of his visits, are each and all facts which are not within the prohibition of the statute, and to which the physician may be permitted to testify. Dr. Inglis had testified to the dates and number of his professional visits upon Mr. Briesenmeister both before and after he made application to defendant, and that he had been his family physician; and this portion of his testimony should not have been stricken from the case if, under the pleadings, it was admissible at all.

In *Farmers' Mut. Fire Ins. Co. v. Crampton*, 43 Mich. 421, it was held that a notice, given with the plea of the general issue, that the defendant would give in evidence that the plaintiff was guilty of fraud in procuring the insurance, was sufficiently definite to permit defendant to show a fraudulent overvaluation of the property

insured, by a cross-examination of the plaintiff, who offered himself as a witness in his own behalf. It was there held that it is sufficient if such a notice fairly apprises the plaintiff of the defense that will be set up. The whole question of notice under the plea of general issue was gone over in *Cresinger v. Reed*, 25 Mich. 450; and the rule laid down in *Rosenbury v. Angell*, 6 Mich. 508, and *M'Hardy v. Wadsworth*, 8 Id. 349, was approved. In those cases it was said that the sole test of the sufficiency of a notice is that it shall apprise the plaintiff of the nature of the defense relied on, so that he may be prepared to meet it, and to avoid surprise on the trial. In the case now under consideration the notice is very general, but it apprises the plaintiff of the nature of the defense relied upon; and, inasmuch as the record contains no intimation that the plaintiff was at all surprised by the testimony introduced, we think the court was right in laying no stress upon that part of the objection, and shall consider the notice sufficient.

As the ruling of the court in striking out the testimony above designated as admissible will necessitate a new trial, it is proper that we should pass upon some other assignments of error relied upon by counsel for defendant. The assignee of a beneficiary is entitled to raise the question of privilege concerning the physician's testimony. *Edington v. Ins. Co..*, 67 N. Y. 185.

The statements in the proofs of death furnished by claimant are a waiver of the privilege *only* in so far as the statements therein contained refer to the subject-matter claimed as privileged. It is competent to read such proofs of death and last sickness and cause of death in evidence as bearing upon the truthfulness of the answers contained in the application.

Counsel for defendant also claim that such a privilege as exists under the statute may be waived, and that it

was waived in this case by permitting Dr. Inglis to be examined and to testify as to the ailments of Briesenmeister, and his treatment of him, without objection, and that it was too late, after the testimony was admitted, to move to strike it out on the ground that it disclosed confidential communications. Counsel are right in this position. The privilege must be claimed before the testimony is admitted, or it ceases to be a privilege, and is waived, where no objection is made to the introduction of the testimony. It is a personal privilege, and the party entitled to the protection which the statute gives cannot stand by without objection, and experiment upon the result of permitting the testimony to remain in the case if it is favorable to him, or moving to strike it out if it is unfavorable.

It was held in *Grattan v. Ins. Co.*, 92 N. Y. 274, that, where a party had waived the privilege at one trial, he could claim it upon a new trial of the same case; and, if the court had merely struck out such testimony as would be privileged upon another trial, I should not favor a reversal, for the reason that, if such ruling was the only error, it would be futile to order another trial. But the court struck out too much, and the ruling included testimony which was relevant to the question whether the answers given to the question in the application were true. In the case of *McKinney v. Railroad Co.*, 104 N. Y. 352 (10 N. E. Rep. 544), the court seems to have taken an oppposite position, and, although the *Case of Grattan* was called to its attention, it overruled that case without mentioning the fact, the court broadly stating:

"There is no principle or authority for holding, after a consent to publish such information has been properly given, and the evil, if any, consummated, that the privileged person can again raise the objection."

The decision is based upon the Code of Civil Proced-

ure, which declares that the information acquired by a physician in his professional capacity shall not be disclosed unless the patient expressly waives its prohibition. Sections 834, 836, Code.  The argument was that,—

"After its publication, no further injury can be inflicted upon the rights and interests which the statute was intended to protect, and there is no further reason for its enforcement.  The nature of the information is of such a character that, when it is once divulged in legal proceedings, it cannot be again hidden or concealed.  It is then open to the consideration of the entire public, and the privilege of forbidding its repetition is not conferred by the statute.  The consent, having been once given and acted upon, cannot be recalled; and the patient can never be restored to the condition which the statute, from motives of public policy, has sought to protect."

It seems to me that the argument loses sight of one of the rights conferred by the statute.  Privilege includes both the security against publication, and the right to control the introduction in evidence, of such information or knowledge communicated to or possessed by the physician.  The latter right exists although the former has ceased to be of any benefit.  The public may know; but shall the jury be permitted to receive and weigh testimony derived from a source which the law has put the seal of silence upon, unless released by the party who alone has the right to say whether that particular witness shall be the medium of conveying such knowledge to the jury?  For instance, the party may have disclosed to a third person all that he has to his physician.  Now, while his admissions may be proved in a proper manner by such third person, they cannot be proved by the physician against the objection of the party.  The privilege conferred is that the physician shall not disclose or testify to those matters which the statute inhibits without the consent of the party to whom the privilege is

extended, and this objection may be interposed whenever and as often as the party's rights may be affected by proffered testimony, if the objection be timely made. *McConnell v. City of Osage*, 45 N. W. Rep. 550. In a new trial the testimony is placed before a new jury, and I think the *Grattan Case* lays down the better rule.

As to the point raised by defendant's counsel pertaining to an answer which had evidently been first written "I have," and afterwards the word "No" written over it, the answer as first written being true and the other false, we think it was submitted to the jury by the court under proper instructions. A question not answered raises no inference for or against the person signing the application. It is the same, in effect, as if no question had been asked.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.