KRAPP v. METROPOLITAN LIFE-INSURANCE CO.

143   369
150   ³468

1. LIFE INSURANCE—ACTION ON POLICY—EVIDENCE—ADMISSIBIL-
ITY—PROOF OF DEATH.
   Where a life-insurance policy stipulates that the proofs of
   death shall be evidence of the facts therein stated in behalf
   of, but not against, the company, they are admissible as an
   admission though not conclusive.

2. WITNESSES—PHYSICIANS—PRIVILEGE.
   In an action on a life-insurance policy, physicians cannot testify
   to facts concerning the health of assured's relatives which
   they acquired through their employment by those persons as
   physicians.  Section 10181, 3 Comp. Laws.

3. SAME—CERTIFICATE OF DEATH—ADMISSIBILITY.
   Under section 4617, 2 Comp. Laws, duly filed certificates of
   death are admissible on the issue of the cause of death of the
   persons to whom they relate, though the physicians who
   made them are prohibited by section 10181, 3 Comp. Laws,
   from testifying to the facts therein stated because acquired in
   their professional capacity.

4. EVIDENCE—OPINIONS—NONEXPERTS—CAUSE OF DEATH.
   Nonexpert witnesses may testify that certain persons died of
   consumption, the weight of their testimony being for the
   jury.

Error to Wayne; Rohnert, J.  Submitted December 6,
1905.  (Docket No. 157.)  Decided March 13, 1906.

Assumpsit by Fritz Krapp against the Metropolitan
Life-Insurance Company on a policy of insurance.  There
was judgment for plaintiff on a verdict directed by the
court, and defendant brings error.  Reversed.

*Haug & Yerkes* and *C. C. Yerkes*, for appellant.

*Frank D. Andrus*, for appellee.

MOORE, J.  The defendant, the Metropolitan Life-
Insurance Company, is a New York insurance com-

pany, having offices and doing business in the State
of Michigan. On March 11, 1902, it issued a policy of in-
surance on the life of Minnie Krapp, who was the wife of
the plaintiff. The policy was in the sum of $500. Minnie
Krapp died on July 6, 1903. The defendant refused to
pay the policy on the ground that answers made by the
insured to certain questions in the application on which
the policy was issued, were not true. Among the state-
ments made by the insured in her application for this in-
surance were the following: That she was then in sound
health, that she had never had bronchitis, nor consump-
tion, that none of her parents, grandparents, brothers, or
sisters, ever had consumption, nor any pulmonary dis-
ease.

As evidence tending to establish the untruth and incor-
rectness of these statements, the defendant offered in
evidence the proofs of death furnished by the beneficiary,
who is the plaintiff. The defendant, to show the answer
was untrue as to her parents, grandparents, brothers, and
sisters, not having consumption or any pulmonary disease,
offered in evidence certificates of death, filed with the
health board, and identified by the physicians who filled
them out, and who testified that the statements were true,
showing that the mother and two sisters died of consump-
tion prior to the issuing of the policy. The defendant
also offered the testimony of the physicians, who made
out the certificates of death, as to the correctness of the
certificates of death; and that the mother and sisters of
the insured died of consumption, and had consumption
prior to the date of the application. The defendant also
offered to show that the mother and two sisters had con-
sumption and died therefrom, prior to the date of the
application, by the husband of the mother of the insured
and the stepfather of the insured; and also by the immed-
iate neighbors of the family of the insured.

The certificates of death were held inadmissible by the
court, because they disclosed matters which were claimed
by the plaintiff to be privileged. The physicians' testi-

mony was held inadmissible, because of privilege. The stepfather's and neighbor's testimony, because they were not physicians, and had no special training or experience which would permit them to determine what diseases people may have had. The proofs of death were rejected by the court, because he claimed they are merely secondary evidence of the facts stated therein. At the conclusion of the trial, the court directed a verdict for the plaintiff. The case is brought here by writ of error.

Were the proofs of death admissible for any other purpose than to show that the insured was dead? It is claimed they are admissible under the following provision in the policy:

"Proofs of death shall be made to the home office in the manner and to the extent required by blanks furnished by the company, and shall contain answers to each question propounded to the claimant, physicians, and other persons indicated in the blanks, and shall further contain the record and verdict of the coroner's inquest, if any be held. The proofs of death shall be evidence of the facts therein stated in behalf of, but not against the company."

And, also, under the following decisions: *John Hancock Mut. Life-Ins. Co.* v. *Dick*, 117 Mich. 518 (44 L. R. A. 846); *Wasey* v. *Insurance Co.*, 126 Mich. 119. We think under these cases the testimony should have been admitted as being in the nature of an admission, though it was not conclusive. It is said that, even if admissible, it is immaterial, because the jury might not infer that because the assured died of consumption, that she had that disease when she was insured, citing *Redmond* v. *Benefit Ass'n*, 150 N. Y. 167. It is probable that this contention is true if no other proof was offered to establish the fact, but proof cannot all be offered at once. The testimony was competent, and though but a link in the chain of testimony, it was competent to make it; for a chain is made up of a succession of links.

Did the court err in holding the testimony of the physician was inadmissible because of privilege? The testi-

mony of the doctor was that he acquired the information which was the subject of inquiry only in his professional capacity, while the persons were treated by him as a physician. We think the offered testimony was within the statute, and properly excluded. See 3 Comp. Laws, § 10181, and the many cases cited in the note to said section. See, also, *Grattan* v. *Insurance Co.*, 80 N. Y. 281; *Davis* v. *Supreme Lodge Knights of Honor*, 165 N. Y. 159.

Did the court err in holding that the certificates of death were inadmissible? Section 4617, 2 Comp. Laws, reads as follows:

"All certificates of death, local registers, or county records authorized under this act, or certified copies thereof, shall be prima facie evidence in all courts, and for all purposes, of the facts recorded therein."

It is said:

"These certificates were not admissible for two reasons:

"*First.* They were secondary evidence when primary was obtainable.

"*Second.* Their contents being privileged matter, under section 10181, 3 Comp. Laws, the offer of their admission was an attempt to circumvent the statute and accomplish indirectly that which the statute directly forbids."

It is also said that to hold their admission admissible under section 4617 is to nullify section 10181, 3 Comp. Laws, and that, as the first-named section was enacted last, without a repealing clause, it will not have that effect, counsel citing *Buffalo Loan, Trust & Safe Deposit Co.* v. *Aid Ass'n*, 126 N. Y. 450; *Davis* v. *Supreme Lodge Knights of Honor*, 165 N. Y. 159; *McKinley* v. *Insurance Co.*, 26 N. Y. Supp. 63.

An examination of these cases will show they are not controlling. In the first two cases the certificates were not made under a general law of the State, but because of what in one of the opinions is characterized as an obscure

provision of the city charter, and it was held the charter provision was local and should not be so construed as to repeal a general law.    In *McKinley* v. *Insurance Co.*, supra, it was held that even if the certificate then offered in evidence was presumptive evidence of the recitals therein, it could be so only as to the things required by the law to be stated, and that, as the physician was not required to certify that the deceased had been diseased four years prior to his death,  the certificate could not be received to establish that fact.  Other New York courts have taken a different view from that suggested by counsel.    Chapter 661 of the Laws of 1893, "the public health law," provided for the collection and keeping of vital statistics.    Section 22 provided that certified copies of the entries of death and causes of death "shall be presumptive evidence in all courts and places of the facts therein stated."    In the insurance case of *Keefe* v. *Benefit Ass'n*, 37 App. Div. (N. Y.) 276, 55 N. Y. Sup. 827, it was held that a copy of the record was competent evidence, citing several cases.    See, also, *Hennessy* v. *Insurance Co.*, 74 Conn. 699; *McKinstry* v. *Collins*, 74 Vt. 147.    We do not think it follows that if effect is given to the provisions of section 4617, 2 Comp. Laws, it repeals or annuls the provisions of section 10181, 3 Comp. Laws. The certificates should have been admitted in evidence.

Did the court err in refusing to receive testimony of others than physicians as to the disease which caused the death of the assured ?    Counsel cite only the case of *Grattan* v. *Insurance Co.*, 80 N. Y. 281, in support of the ruling.    In a brief paragraph language is used which sustains the ruling of the trial court.    We do not, however, think that decision is controlling.    Would it be claimed that an experienced mother would not be competent to say whether a child had measles ?    Or that an intelligent person of mature years who had seen many cases could not tell whether one had so prevalent a disease as consumption ?    In *Elliott* v. *Van Buren*, 33 Mich. 49, Justice CAMPBELL, speaking for the court, said:

" We think there is no rule which can prevent ordinary witnesses from describing what they see, or from testifying concerning the kind of injury or sickness of others whom they have had occasion to consort with, unless it is something out of the common course of general information and experience, or unless the question presented involves medical knowledge beyond that of ordinary unprofessional persons. It would be ridiculous to shut out testimony of what any juryman would understand well enough for all the exigencies of the case before him, simply because no physician has seen or examined the person. It would lead to a denial of justice in all cases of bodily injuries and sickness which did not occur within range of medical help, and which were not regarded as so difficult of treatment as to demand it. There is no danger that the introduction of common testimony on matters of common knowledge will do any more mischief, when open to cross-examination before a court and jury, than would arise from the want of any legal means of selecting witnesses from the numerous class of professional men, who differ as much in their relative merits as many of them do from laymen."

See, also, *Rogers* v. *Ferris*, 107 Mich. 126; *State* v. *Knapp*, 45 N. H. 148.

We think the testimony competent. Its weight was for the jury. For the reasons stated, the judgment is reversed, and a new trial granted.

McALVAY, GRANT, BLAIR, and HOOKER, JJ., concurred.