POLISH ROMAN CATHOLIC UNION OF AMERICA *v.* PALEN.

1. WITNESSES—PHYSICIAN AND PATIENT—DEATH CERTIFICATE.
    Certificate of death and amendment thereof were admissible in evidence in suit to cancel a life insurance policy for fraud, brought after death of insured who had died nearly 17 months after applying for insurance, although physician who made it is prohibited by statute from testifying to facts stated therein because acquired in his professional capacity (3 Comp. Laws 1929, § 14216).

2. INSURANCE—APPLICATION FOR LIFE INSURANCE—FRAUD—BURDEN OF PROOF—HIGH BLOOD PRESSURE.
    To establish fraud upon part of insured in making application for life insurance in which he denied he had had high blood pressure, given as the principal cause of death in death certificate, insurer must show that insured had high blood pressure at time of application, or that he knew or had good reason to believe or had been told at or prior to that time that he had high blood pressure.

3. WITNESSES—PHYSICIAN AND PATIENT—WAIVER OF PRIVILEGE.
    The privilege attached to the relation of physician and patient renders the testimony of a physician with respect to information acquired while attending a patient inadmissible in evidence unless the privilege is waived (3 Comp. Laws 1929, § 14215).

4. SAME—WAIVER OF PRIVILEGE.
    In suit by insurer against administratrix of estate of beneficiary to cancel policy of life insurance on ground of fraud, privilege attached to relation of physician and patient was not waived by defendant in filing an affidavit in support of a preliminary motion in which affidavit certain statements were made by physician regarding his treatment of insured as affidavit could not be received in evidence in lieu of testimony and as substantive proof, where defendant raised objection (3 Comp. Laws 1929, § 14215).

5. SAME—PHYSICIAN AND PATIENT—PRIVILEGED COMMUNICATION—WAIVER.
    Fact that there has been publication of confidential information communicated to, or possessed by, a physician in his at-

tendance upon a patient does not waive the privilege attached thereto so far as proving such information by the physician is concerned against objection as the privilege includes both the security against publication and the right to control the introduction in evidence (3 Comp. Laws 1929, § 14215).

6. SAME—PRIVILEGED COMMUNICATIONS—OBJECTIONS.

Objection to testimony of physician as to privileged communication may be interposed whenever and as often as the party's rights may be affected by proffered testimony if objection be timely made (3 Comp. Laws 1929, § 14215).

7. INSURANCE—FRAUD—APPLICATION—HIGH BLOOD PRESSURE.

Applicant for policy of life insurance whose medical examination showed conclusively that he did not then have high blood pressure, who is not claimed to have been told he had high blood pressure nor reason to believe he had it, was employed continuously in a hardware store doing heavy work, and who had every indication of being in good health, did not, in denying that he had high blood pressure, perpetrate a fraud upon insurer, notwithstanding high blood pressure was named as the principal cause of death in death certificate nearly 17 months later.

8. SAME—PHYSICIANS—NUMBER AND DATES OF VISITS.

In suit to cancel a life insurance policy after death of insured, the testimony of a physician is admissible for purpose of showing number and dates of professional visits he had made to insured.

9. SAME—FRAUD IN APPLICATION—FAILURE TO DISCLOSE ATTENDANCE BY PHYSICIAN.

Failure of an applicant for life insurance to state that he had been attended by a physician within about two years of time he applied for insurance did not constitute a fraudulent misrepresentation of a material fact sufficient to void the policy where there is no proof that he was then suffering from a serious ailment.

10. SAME—APPLICATION—FALSE STATEMENTS—EVIDENCE.

Since a false statement in an application for life insurance, in order to void the policy, must have been made with actual intent to deceive insurer or have materially affected either the acceptance of the risk or hazard assumed by the insurer and evidence fails to establish falsity of statements made in application by any preponderance of the evidence or by reasonable inference, but rather the truth of the statements made, policy was properly sustained as valid.

Appeal from Wayne; Reid (Neil E.), J., presiding. Submitted June 4, 1942. (Docket No. 17, Calendar No. 41,830.) Decided September 8, 1942.

Bill by Polish Roman Catholic Union of America, an Illinois corporation, against Sophie Palen, administratrix of the estate of Rozalia Palen, deceased, to cancel a life insurance policy and for other relief. Cross-bill by defendant to recover sums due under the policy and for other relief. Bill dismissed. Decree for defendant on cross-bill. Plaintiff appeals. Affirmed.

*Stanley J. Draganski,* for plaintiff.

*J. Frederick Wilson,* for defendant.

BOYLES, J. The plaintiff, an Illinois corporation, filed this bill to stay proceedings at law and to cancel a life insurance policy, alleging fraud, misrepresentation, and false statements in the application for the insurance. The policy was issued by plaintiff on the life of Blazej Palen, payable to Rozalia Palen, his wife. The insured and the beneficiary are both deceased and the beneficiary's estate (defendant herein) now continues the case by Sophie Palen, administratrix thereof. The defendant filed a cross-bill to recover the amount of the policy and had a decree on the cross-bill for the full amount, and interest. Plaintiff's bill was dismissed, and from the decree thus entered plaintiff appeals.

In the court below it was stipulated that those parts of the contract entitled "Application for life insurance membership," "Applicant's certificate," and the medical examiner's certificate, might be received in evidence as part of the contract; also, that said Blazej Palen died on October 20, 1938; that proof of

death was duly furnished plaintiff; and that plaintiff refused to pay the proceeds of said policy to the beneficiary.

Plaintiff asserts as ground for cancellation of the policy that the insured made false answers to material questions in the application and to the medical examiner, and concealed material facts as to his physical condition, by reason whereof plaintiff claims the right to cancel the policy. As applied to this case, the questions and answers to which plaintiff refers are as follows:

(1) Question—"Have you had or have you ever been told that you had, * * * high blood pressure?" Answer—"No."

(2) Question—"Give name and address of your usual medical attendant or family physician." Answer—"None."

(3) Question—"Have you had any periodic health examinations?" Answer—"No."

(4) Question—"Are you now in good health?" Answer—"Yes."

The application for the policy and the medical examiner's report were signed May 28, 1937. The insured died October 20, 1938. The death certificate originally gave the principal cause of death as "essential hypertension, *duration lifetime,*" contributing cause "uremia." This was later changed by the attending physician who made the certificate to "duration, unknown." The certificate and amendment were admissible in evidence on the issue of the cause of death, although the physician who made it is prohibited by statute from testifying to the facts therein stated because acquired in his professional capacity. *Krapp* v. *Metropolitan Life-Insurance Co.*, 143 Mich. 369 (114 Am. St. Rep. 651). The certificate evidences that the principal cause of death of the insured in October, 1938, was essential hyper-

tension (high blood pressure), duration unknown.

In order to establish that the insured made a false statement in answering question (1) at the time of signing his application in May, 1937, the burden of proof was on plaintiff to show that the insured had high blood pressure at that time, or that he knew or had good reason to believe or had been told at or prior to that time that he had high blood pressure. Plaintiff attempted to show this by the testimony of a physician who on one occasion had treated the insured for some physical ailment in 1935. This testimony was objected to and ruled inadmissible for that purpose by the circuit judge on the ground of privilege between physician and patient under 3 Comp. Laws 1929, § 14216 (Stat. Ann. § 27.911), which provides:

"No person duly authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon."

Unless the privilege was waived by defendant, the testimony was plainly inadmissible for the claimed purpose. *Storrs* v. *Scougale,* 48 Mich. 387; *Cooley* v. *Foltz,* 85 Mich. 47; *Perry* v. *John Hancock Mutual Life-Insurance Co.,* 143 Mich. 290; *McKinney* v. *Liberty Life Insurance Company of Illinois,* 263 Mich. 490. Plaintiff claims that the defendant had waived the privilege. Before trial, the defendant, in support of a preliminary motion, had filed an affidavit of this physician making certain statements regarding his treatment of the insured which plaintiff sought to prove by the testimony of the physician at the trial. Obviously the affidavit itself could

not be received in evidence in lieu of testimony and as substantive proof, and, on objection, the court ruled that the privilege between physician and patient had not been waived by filing the affidavit. The ruling was proper. In *Briesenmeister* v. *Supreme Lodge Knights of Pythias of the World,* 81 Mich. 525, this court repudiated the theory that once the confidential information had been published, the privilege of objecting to its repetition had been waived, and this court declined to approve the argument that the consent once given could not be later recalled:

"It seems to me that the argument loses sight of one of the rights conferred by the statute. Privilege includes both the security against publication, and the right to control the introduction in evidence, of such information or knowledge communicated to or possessed by the physician. The latter right exists although the former had ceased to be of any benefit. The public may know; but shall the jury be permitted to receive and weigh testimony derived from a source which the law has put the seal of silence upon, unless released by the party who alone has the right to say whether that particular witness shall be the medium of conveying such knowledge to the jury? For instance, the party may have disclosed to a third person all that he has to his physician. Now, while his admissions may be proved in a proper manner by such third person, they cannot be proved by the physician against the objection of the party. The privilege conferred is that the physician shall not disclose or testify to those matters which the statute inhibits without the consent of the party to whom the privilege is extended, and this objection may be interposed whenever and as often as the party's rights may be affected by proffered testimony, if the objection be timely made."

In an action by a beneficiary under a life insurance policy, plaintiff's objection to a physician testifying

as to an ailment concerning which he had received confidential information was sustained by this court, notwithstanding plaintiff had previously signed a proof of loss authorizing the physician to testify in regard thereto. *Wohlfeil* v. *Bankers Life Co.,* 296 Mich. 310.

No one claims that the insured had been told when he signed the application that he had high blood pressure. On the contrary, the certificate of the medical examiner made on that date and accompanying the application expressly shows:

"18. Blood pressure (sitting):
"(a) Systolic ................ (a) 155
"(b) Diastolic (at disappearance
of sound) .............. (b) 95"

The medical examination showed conclusively that the insured did not have high blood pressure when he made the application. He had no reason to believe that he had high blood pressure. He was employed continuously in a hardware store, doing carpenter work, laying cement, shoveling dirt, doing heavy work, and had every indication of being in good health.

However, the trial court properly ruled that the physician's testimony was admissible for the purpose of showing that he had attended the insured and extended treatment. *McKinney* v. *Liberty Life Insurance Company of Illinois, supra.* A physician may be allowed to testify to the number and dates of professional visits. *Briesenmeister* v. *Supreme Lodge Knights of Pythias of the World, supra.* The court received and considered the testimony for that purpose. It showed that the insured had consulted the physician for one illness in 1935. He was not advised that he had high blood pressure. It is true that the insured failed to disclose the fact of having

been attended by a physician in 1935. However, there is no proof that the insured was then suffering from a serious ailment. In *Rickert* v. *Travelers Insurance Co. of Hartford, Conn.,* 282 Mich. 538, this court said:

"If the illness for which the doctor was consulted was not serious, the failure to disclose such attendance is not such a material misrepresentation as to void the policy. *Brown* v. *Metropolitan Life Ins. Co.,* 65 Mich. 306 (8 Am. St. Rep. 894); *Pudritzky* v. *Supreme Lodge Knights of Honor,* 76 Mich. 428; *Blumenthal* v. *Berkshire Life Ins. Co.,* 134 Mich. 216 (104 Am. St. Rep. 604)."

There is no testimony that any condition or ailment of the insured was of such a nature as to have a material bearing upon the truth or falsity of his answer to question (1) in the application. The plaintiff has failed to sustain the burden of proving that the answer of the insured to the first question was false.

There is no proof that the insured ever had any other occasion to consult a physician or employ medical attention. Plaintiff contends that the insured answered falsely when he wrote "None" in answer to the request that he give the name and address of his *usual medical attendant or family physician;* also, that the insured made false statements in denying that he had any *periodic health examinations,* and in stating that he was "now in good health" when the application was signed. The admissible evidence tends to indicate the truthfulness, rather than falsity, of these statements. The dearth of any proof of serious illness in the case at bar readily distinguishes this case from the facts in *Wohlfeil* v. *Bankers Life Co., supra,* and we adhere to the rule of law as stated by Mr. Justice NORTH in that case:

"The testimony   \*   \*   \*   pertained to the insured's condition at a time some months prior to the date of the application for reinstatement; and since the doctor could not testify concerning the information he had obtained incident to his professional relation with the insured, it is not disclosed whether the insured's ailment, if any, was of a serious character or otherwise. If it was not of a serious character, defendant was not defrauded and plaintiff's right to recover is not barred."

We can find in this record no impelling reasons for reaching a conclusion different than that reached by the circuit judge who heard the proofs. The alleged falsity of statements in the application has not been established by any preponderance of the evidence or by reasonable inference. There was no apparent attempt made by the insured to deceive the insurer, nor can we say that the acceptance of the risk was materially affected by the lack of knowledge of any serious ailment by the insured. Lacking such knowledge, he is not guilty of any concealment of material facts. The mere conclusion stated by the insured that he was in good health was fully justified by any knowledge possessed by him at the time. We hold that this did not materially affect the acceptance of the risk by the insurer. The Michigan statute (3 Comp. Laws 1929, § 12444 [Stat. Ann. § 24.280]) governing the issuance of life insurance policies provides:

"The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

The decree entered in the circuit court adjudging the policy to be in full force and effect, and decree-

ing that the estate of the beneficiary recover from the insurer the amount of the policy, with interest, is affirmed, with costs to appellee.

CHANDLER, C. J., and NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.