## MILLER v. PACIFIC MUT. LIFE INS. CO.

### Civ. No. 1767.

United States District Court,
W. D. Michigan, S. D.
Nov. 5, 1953.

Warner, Norcross & Judd and Harold S. Sawyer, Grand Rapids, Mich., for plaintiff.

Uhl, Bryant, Slawson & Wheeler and Gordon B. Wheeler, Grand Rapids, Mich., for defendant.

STARR, District Judge.

On July 5, 1950, the defendant company issued its life insurance policy No. S1261691 in the principal amount of $25,000 on the life of Ben H. Newmark, in which policy the plaintiff Leonard C. Miller was designated as beneficiary. The insured died December 14, 1950, and upon defendant's denial of liability, the plaintiff began the present action to re-

cover the principal amount of the policy together with interest and costs of suit. The defendant answered, denying liability on the ground of fraud and misrepresentation by the insured in the obtaining of the policy, in that his answers to certain questions in the application for the policy were false.

Thereafter, on December 27, 1952, the defendant gave notice that it would take the depositions of Dr. A. E. Brown and Dr. Arthur W. Robinson upon oral examination. The notice stated that these proposed depositions would relate, among other things, to examinations of the insured made by Dr. Brown and Dr. Robinson or to information concerning the insured acquired by them in their professional capacities. On January 2, 1953, the plaintiff filed a motion for an order limiting the scope of the proposed depositions, in that the defendant's attorneys should ask no questions and make no inquiry of the doctors relating in any manner to information which they had gained through their examination of, treatment of, or consultation with, the insured, or relating to any other information which they had gained arising out of or in connection with their physician-patient relationship with the insured. The plaintiff bases his motion to limit the scope of the doctors' depositions on the following grounds:

*First*, that Dr. Brown and Dr. Robinson were each consulted in their professional capacities as physicians and medical doctors by the insured, Ben H. Newmark, as their patient, and that whatever information the two doctors may have concerning Newmark was gained solely through their physician-patient relationship with him, while acting in their professional capacities;

*Second*, that such information as could be the subject of testimony by Drs. Brown and Robinson concerning Newmark is privileged and constitutes privileged communications and information under the laws of the State of Michigan, in particular Comp.Laws Mich.1948, § 617.62;

*Third*, that the plaintiff in this case is the named beneficiary in the policy of life insurance, which is the subject of this action and which insured the life of said Ben H. Newmark, and the plaintiff claims the benefit and protection of the laws of the State of Michigan relating to privileged communications and information.

In its answer to plaintiff's motion the defendant admits that the testimony to be elicited from Dr. Brown and Dr. Robinson would relate, at least in part, to information obtained by them in the course of their examination and treatment of the insured, but it contends that the plaintiff is not entitled to have the scope of the doctors' depositions limited for the following reasons:

"1. The examinations of said Ben H. Newmark by the proposed witnesses (Drs. Brown and Robinson) occurred in October, 1948, and the privilege claimed by plaintiff has been waived by virtue of the fact that in the application for policy No. S1261691 issued by defendant to plaintiff on the life of Ben H. Newmark, the following waiver was signed both by the beneficiary, Leonard C. Miller, plaintiff herein, and by the insured, Ben H. Newmark, on June 24, 1950, which was after the dates of the examinations of the said Ben H. Newmark by said two proposed witnesses: * * *

" 'And the proposed insured hereby waives, for himself and any other person interested, the privilege of any communications to, and of the information acquired by, any physician or other person whom he has consulted or been treated by or may hereafter consult or be treated by, and does hereby authorize any such physician or other person to disclose or testify concerning any and all facts or information acquired by him in professional capacity or otherwise.'

"2. That among the proofs of death furnished to defendant by

plaintiff in connection with said policy S1261691, were (1) claimant's statement sworn to by plaintiff on January 20, 1951, (2) physician's statement signed by George C. Thosteson, M. D., on January 19, 1951, and (3) photostatic copy of death certificate of Benjamin H. Newmark, certified by the commissioner of health of the Detroit department of health on December 27, 1950; that said documents contain questions and answers relating not only to the cause of the death of said Ben H. Newmark, but also to his treatment by physicians during his last illness and during the three years prior thereto; and that the privilege claimed by plaintiff, within the scope of the matters covered by said proofs of death, has been waived thereby."

The parties have stipulated that part one of the application for the policy, which includes the waiver in question, and the documents submitted by the plaintiff as proof of the insured's death, should be considered as received in evidence for the purpose of plaintiff's motion; also that oral arguments on the plaintiff's motion were waived and that it be submitted on briefs.

The defendant is obviously seeking to secure the testimony of Dr. Brown and Dr. Robinson as to the state of the insured's health prior to his application for the policy for the purpose of establishing its alleged defense that the policy was obtained through fraud and misrepresentation on the part of the insured. The plaintiff contends that the information which the defendant seeks to obtain from the doctors is privileged under the physician-patient rule; that under the established law of Michigan the purported waiver of the privilege signed by the insured is void as against public policy; and, therefore, that the scope of the proposed depositions should be so limited as to exclude any information gained by the doctors through their physician-patient relationship with the insured. On the other hand, the defendant contends that by their execution of the application, which contained the waiver and became a part of the insurance contract, the insured and the plaintiff-beneficiary waived the physician-patient privilege and, therefore, that the scope of the doctors' depositions should not be limited.

At common law there was no physician-patient privilege, and this is apparently the rule in many States. New York Life Insurance Co. v. Newman, 311 Mich. 368, 18 N.W.2d 859. However, a physician-patient privilege has been created in Michigan by State statute. Comp.Laws 1948, § 617.62, Comp.Laws 1915, § 12550, provides:

"No person duly authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon: Provided, however, That in case such patient shall bring an action against any defendant to recover for any personal injuries, or for any malpractice, if such plaintiff shall produce any physician as a witness in his own behalf, who has treated him for such injury, or for any disease or condition, with reference to which such malpractice is alleged, he shall be deemed to have waived the privilege hereinbefore provided for, as to any or all other physicians, who may have treated him for such injuries, disease or condition: Provided further, That after the decease of such patient, in a contest upon the question of admitting the will of such patient to probate, the heirs at law of such patient, whether proponents or contestants of his will, shall be deemed to be personal representatives of such deceased patient for the purpose of waiving the privilege hereinbefore created."

■ It is significant that the above statute provides only two exceptions to the strict physician-patient privilege,

that is, *first*, in a suit for malpractice where the physician should be allowed to defend himself, and *second*, in a will contest where the testamentary capacity of the deceased is in issue. It seems clear that had the legislature intended that the physician-patient privilege could be waived in any other instances, it would have so provided. The written waiver here in question is a Michigan contract, and the question as to whether it effectively waived the physician-patient privilege is clearly one of substantive law and should be determined in accordance with the established law of Michigan. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Ranger, Inc., v. Equitable Life Assur. Soc. of United States, 6 Cir., 196 F.2d 968; 5 Moore's Federal Practice, 2d Ed., para. 43.07, pages 1332, 1333. Therefore, the physician-patient privilege statute quoted above, and the State-court decisions construing that statute, must be considered in determining the legality of the waiver.

The first case to be considered is Gilchrist v. Mystic Workers of the World, 1915, 188 Mich. 466, 154 N.W. 575. This was an action by the husband of the insured, who was the beneficiary in a policy or benefit certificate issued by the defendant. The defendant contended that the insured had died as the result of an abortion and that it was relieved from liability under a provision of the certificate that it would be forfeited if death was caused by a violation or attempted violation of any laws of the State. The application for the benefit certificate, as shown by the printed record, contained the following purported waiver of the physician-patient privilege: "And I hereby expressly waive for myself and beneficiaries the privilege or benefits of any or all laws which are now or may be hereafter in force making incompetent the testimony of or disqualifying any physician from testifying concerning any information obtained about me by him in a professional or other capacity." In considering the admissibility of the testimony of two physicians who had examined the insured subsequent to her application for the benefit certificate, the court said, 188 Mich. at page 476, 154 N.W. at page 578:

"Our statute creates an absolute privilege, with but one exception, where a waiver may be made by the representatives of the deceased patient, and that only in a contest upon the question of admitting the patient's will to probate. Our statute, therefore, contains the more stringent prohibition, and the patient's waiver of the privilege was of no force or effect. Holden v. Metropolitan Life Insurance Co., supra (165 N.Y. 13, 17 [58 N.E. 771]). It has been the policy of the Legislature and the courts of this state to protect this privilege. The waiver contained in the application was therefore against public policy and void, and the testimony of the attending physicians as to all knowledge obtained by them in such capacity was properly excluded. This includes all of the testimony of the physicians as to matters which were obtained from deceased in their professional capacity, together with their opinions based upon such information."

A new trial on other grounds was granted in the above Gilchrist case, and it again came before the Supreme Court of Michigan in Gilchrist v. Mystic Workers of the World, 1917, 196 Mich. 247, 163 N.W. 10. In reaffirming its former decision relative to the validity of the deceased's waiver of the physician-patient privilege in her application for the benefit certificate the court said, 196 Mich. at page 251, 163 N.W. at page 11:

"Counsel again urge and argue at length, as was done in defendant's application for a rehearing upon that decision, that the former opinion on this point should be overruled, as against the weight of authority, a construction of the statute inimical to legitimate defense against fraud, and seriously detrimental to the interests of defendant and other insurance companies doing busi-

ness in this state. After further examination of the decisions cited and the statutes to which they relate in the light of the stringent prohibitory terms of the Michigan statute, as now amended, we remain of the opinion that the language of our statute clearly expresses the legislative intent to prohibit, as a matter of public policy, anticipatory waivers of this nature which are to become operative after the mouth of the patient is closed by death, and are content with the reasons given in the former opinion."

The physician-patient privilege statute in force at the time of the decisions in the two Gilchrist cases, Comp.Laws 1915, § 12550, was the same as the present statute, Comp.Laws 1948, § 617.62. Furthermore, there is no material difference between the language of the waiver provision involved in the Gilchrist cases and that of the waiver involved in the present case. In view of the positive terms of the Michigan statute, the fact that the waiver in the Gilchrist cases was signed only by the insured, while the waiver in the present case was signed by both the insured and the plaintiff-beneficiary is immaterial. The fact that the waiver in the Gilchrist cases was signed by the insured prior to the medical examinations, while the waiver in the present case was signed subsequent to the medical examinations is likewise immaterial. The Gilchrist decisions undoubtedly established the law of Michigan that an insured's written waiver of the physician-patient privilege is void as against public policy.

However, the decision of the Court of Appeals for this judicial circuit in the case of Lawrence v. Connecticut Mut. Life Ins. Co., 6 Cir., 1937, 91 F.2d 381, 383, must be considered. That was an action by the beneficiaries in two life insurance policies. The insurance company defended on the ground that the insured had obtained reinstatement of the policies through fraud and misrepresentation. The insured had signed a waiver of the physician-patient privilege reading as follows: "I expressly waive on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has heretofore attended or examined me or who may hereafter attend or examine me from disclosing any knowledge or information which he thereby acquired." In considering the admissibility of the testimony of the physician who had examined and treated the insured, the court said, 91 F.2d at pages 382–383:

"The principal questions are (1) whether it was error for the court to admit the testimony of certain physicians disclosing information obtained by them in examining and treating the insured, upon the ground that such information was inadmissible under the Michigan statute * * *.

"We think that the testimony of the physicians was admissible. The insured had expressly waived the protection of the statute. * * * While under the Michigan statute communications by a patient to his physician are privileged, the statute does not prohibit waiver of the privilege, and in fact expressly recognizes it. In Gilchrist v. Mystic Workers of the World, 188 Mich. 466, 154 N.W. 575, Ann.Cas.1918C, 757, the Michigan Supreme Court held that an applicant for insurance cannot waive in advance a privilege which excludes the testimony of his physicians upon the ground that such waiver is against public policy. This decision runs counter to a long line of Michigan authorities, both prior and subsequent. Fraser v. Jennison, 42 Mich. 206, 225, 3 N.W. 882; Briesenmeister v. [Supreme Lodge] Knights of Pythias, 81 Mich. 525, 533, 45 N.W. 977; Cf. La Count v. Von Platen-Fox Co., 243 Mich. 250, 220 N.W. 697; People v. Kayne, 268 Mich. 186, 190, 255 N.W. 758. Except where vested rights arise, this court will not apply an isolated

decision of the State court which is in conflict with both earlier and later interpretations of a local statute. The insured expressly agreed that all of his physicians might be conferred with and disclose facts known to them, and the physicians were properly allowed to testify."

The court has examined the four Michigan authorities cited in the above quotation from Lawrence v. Connecticut Mut. Life Ins. Co. The case of Fraser v. Jennison, 1879, 42 Mich. 206, 3 N.W. 882, involved a will contest in which the contestants sought to show that the testator was mentally incompetent when the will was executed. The proponents and the beneficiaries presented the testimony of the deceased's physician, a Dr. Klein, who testified, over objection, regarding the testator's illness and that in his opinion the testator was of sound mind when he executed the will. The court held that the testimony of Dr. Klein was admissible because in offering his testimony the proponents and the beneficiaries under the will had waived the statutory physician-patient privilege. The case of Briesenmeister v. Supreme Lodge Knights of Pythias, 1890, 81 Mich. 525, 45 N.W. 977, 978, cited in the above quotation from the Lawrence case, involved alleged fraudulent representations in an application for a policy or benefit certificate issued by the defendant lodge. The application for the benefit certificate contained the following question: "Are you willing that your family physician should, in the interest of the Endowment Rank, give it all the information in his power regarding your physical condition, habits, and general health?" To this question the insured had answered, "Yes." Without discussing, and apparently disregarding, the purported waiver in the insured's application for the benefit certificate, the court said, 81 Mich. at pages 531–534, 45 N.W. at page 978:

"This statute (physician-patient privilege) covers all information which Dr. Inglis acquired by observation, while in attendance upon Mr. Briesenmeister, of his condition or ailments, which in any manner enabled him to prescribe for him, as well as to communications made to him by his patient. * * * All disclosures by the patient to his physician respecting his ailments are privileged, whether they are necessary to enable the doctor to prescribe for him as a physician or not. * * * The fact that a doctor is the family physician of the insured, and the fact that he attended the insured professionally, and the dates and number of his visits, are each and all facts which are not within the prohibition of the statute, and to which the physician may be permitted to testify. Dr. Inglis had testified to the dates and number of his professional visits upon Mr. Briesenmeister both before and after he made application to the defendant, and that he had been his family physician; and this portion of his testimony should not have been stricken from the case if, under the pleadings, it was admissible at all. * * * The statements in the proofs of death furnished by claimant are a waiver of the privilege *only* in so far as the statements therein contained refer to the subject-matter claimed as privileged. It is competent to read such proofs of death and last sickness and cause of death in evidence as bearing upon the truthfulness of the answers contained in the application. Counsel for defendant also claims that such a privilege as exists under the statute may be waived, and that it was waived in this case by permitting Dr. Inglis to be examined and testify as to the ailments of Briesenmeister, and his treatment of him, without objection, and that it was too late, after the testimony was admitted, to move to strike it out on the ground that it disclosed confidential communications. Counsel is right in this position. *The privilege must be claimed before the testimony is admitted, or it ceases to be a privi-*

*lege, and is waived, where no objection is made to the introduction of the testimony.* It is a personal privilege, and the party entitled to the protection which the statute gives cannot stand by without objection, and experiment upon the result of permitting the testimony to remain in the case if it is favorable to him, or moving to strike it out if it is unfavorable."

From examination of the decisions in the above Fraser and Briesenmeister cases it can hardly be said that they run counter to, or in any wise affect, the clear and definite decisions of the Michigan Supreme Court in the later Gilchrist cases. The Court of Appeals in Lawrence v. Connecticut Mut. Life Ins. Co., supra, also cited the cases of La Count v. Von Platen-Fox Co., 1928, 243 Mich. 250, 220 N.W. 697, and People v. Kayne, 1934, 268 Mich. 186, 255 N.W. 758, as running counter to the holdings of the Michigan Supreme Court in the Gilchrist cases. The factual situations involved in the La Count and Kayne cases clearly distinguish them from the earlier Gilchrist cases, and they certainly did not change or overturn the Gilchrist holding that an insured's written waiver of the physician-patient privilege is void as against public policy.

Any doubt which the holding in Lawrence v. Connecticut Mut. Life Ins. Co. may have cast upon the Michigan law as established by the Gilchrist cases, is dispelled by the later decision of the Supreme Court of Michigan in Wohlfeil v. Bankers Life Co., 1941, 296 Mich. 310, 296 N.W. 269, and by the decision of the Court of Appeals in Ranger, Inc., v. Equitable Life Assur. Soc. of United States, 6 Cir., 1952, 196 F.2d 968. In the Wohlfeil case the plaintiff as beneficiary sued to recover on an insurance policy, and the defense was made that the deceased had obtained reinstatement of his policy through false and fraudulent representations. The form of proof of loss signed by the plaintiff beneficiary contained the following statement: "Do you authorize the above named [Dr. H.

C. Hill] or any other physician or practitioner consulted by the deceased or by whom he was attended during the last five years and who has information regarding the personal history, physical or mental condition of the deceased, to disclose the same and testify thereto?" To this question the plaintiff-beneficiary answered, "Yes." In its opinion the Supreme Court said, 296 Mich. at page 320, 296 N.W. at page 273:

"Notwithstanding this concession obtained from plaintiff, under the circumstances it was not error on the part of the trial court to sustain objections made by her to any testimony of Doctor Hill as to matters of a privileged character. The law as administered by the trial court is provided by the statute. [3] Comp.Laws 1929, § 14216; Stat. Ann. [§] 27.911. It (the physician-patient privilege) cannot be changed or frittered away in the manner attempted in this case. Gilchrist v. Mystic Workers, 188 Mich. 466, 154 N.W. 575. * * * There was no prejudicial error in any of the rulings of the trial court which prevented Doctor Hill from testifying relative to the nature of insured's illness or as to what Doctor Hill learned through reports submitted to him by the University Hospital at Ann Arbor."

It is clear that this decision in the Wohlfeil case confirmed the Michigan law relating to waiver of the physician-patient privilege as enunciated in the Gilchrist cases. The holding in the Wohlfeil case was cited with approval in Polish Roman Catholic Union of America v. Palen, 302 Mich. 557, 5 N.W.2d 463. In the case of Ranger, Inc., v. Equitable Life Assur. Soc. of United States, 6 Cir., 196 F.2d 968, the plaintiff corporation brought suit to recover on a life insurance policy, and the defense was made that the policy had been obtained through the fraudulent representations of the insured in his application for the policy. The wife of the insured had given written authority to the physi-

cians who had treated her deceased husband to furnish to the representatives of the insurer the facts pertaining to the insured's illness and cause of death. The defendant claimed that this was a waiver of the physician-patient privilege provided for in the Michigan statute, Comp. Laws 1948, § 617.62, hereinbefore quoted. The appellate court held that the plaintiff corporation as beneficiary could assert the physician-patient privilege and, in considering the admissibility of the testimony of Dr. Ackerman, who had attended the deceased in his lifetime, the court said, 196 F.2d at page 972:

"In the present case, the wife of the insured gave written authorization to the physicians who had treated her husband to furnish to the representative of the insurer who was investigating the case, the facts pertaining to the insured's illness and cause of death. Appellee claims this was a waiver of the privilege. But it has been held otherwise in Michigan, the law of which State is controlling in this case. Gilchrist v. Mystic Workers of the World, 188 Mich. 466, 475–476, 154 N.W. 575; Wohlfeil v. Bankers Life Co., 296 Mich. 310, 320, 296 N.W. 269. And although the death certificate was properly admitted in evidence, it did not operate as a waiver of the privilege so as to permit the physician who made out the certificate to testify generally about the patient's condition. Krapp v. Metropolitan Life Insurance Co., 143 Mich. 369, 106 N.W. 1107; Wigmore, Evidence, 3d Ed., § 2390(4)."

■ It is clear that notwithstanding its statement in Lawrence v. Connecticut Mut. Life Ins. Co., supra, the Court of Appeals for this judicial circuit in the later Ranger case recognized that the decisions of the Supreme Court of Michigan in the Gilchrist and Wohlfeil cases, supra, established the law in Michigan that a written waiver of the physician-patient privilege executed by an insured in his lifetime is void as against public policy. The court therefore concludes that under the established law of Michigan the waiver of the physician-patient privilege in the present case, signed by the insured, Ben H. Newmark, is void.

The defendant further contends that the proofs of death furnished the defendant by the plaintiff-beneficiary operate as a waiver of the physician-patient privilege as to the information acquired by Drs. Brown and Robinson which is within the scope of the statements contained in the proofs of death. The court cannot agree with this contention. In Polish Roman Catholic Union of America v. Palen, 302 Mich. 557, at page 560, 5 N.W.2d 463, at page 464, the court said:

"The certificate (of death) and amendment were admissible in evidence on the issue of the cause of death, although the physician who made it is prohibited by statute from testifying to the facts therein stated because acquired in his professional capacity. Krapp v. Metropolitan Life. Insurance Co., 143 Mich. 369, 106 N.W. 1107."

In Briesenmeister v. Supreme Lodge Knights of Pythias, 81 Mich. 525, 533, 45 N.W. 977, 979, the court said:

"The statements in the proofs of death furnished by claimant are a waiver of the privilege *only* in so far as the statements therein contained refer to the subject-matter claimed as privileged. It is competent to read such proofs of death and last sickness and cause of death in evidence as bearing upon the truthfulness of the answers contained in the application."

In Ranger, Inc., v. Equitable Life Assur. Soc., supra, the court said, 6 Cir., 196 F.2d at page 972:

"And although the death certificate was properly admitted in evidence, it did not operate as a waiver of the privilege so as to permit the physician who made out the certificate to testify generally about the patient's condition."

■ From the foregoing and other authorities the court holds that the

proofs of death furnished by the plaintiff-beneficiary in the present case may be read in evidence as bearing upon the truthfulness of the answers contained in the insured's application, but that the admission of such proofs in evidence does not operate as a waiver of the physician-patient privilege as to information within the scope of the statements in such proofs, acquired by Drs. Brown and Robinson in their professional capacities.

In summary, the court concludes: *first*, that the scope of the proposed depositions of Dr. A. E. Brown and Dr. Arthur W. Robinson should be limited, in that during the course of their oral examination the defendant's attorneys shall ask no questions and make no inquiry of said witnesses relating in any manner to information gained by them through their examination of, treatment of, or consultation with, the insured, Ben H. Newmark, or relating to any other information regarding the insured's health gained by them in connection with their physician-patient relationship with the insured; *second*, that said physicians are not precluded from testifying as to their having attended the insured professionally, as to the dates and number of their visits or consultations with the insured, and as to facts they may have observed as to the insured's condition before the physician-patient relationship existed. Polish Roman Catholic Union of America v. Palen, 302 Mich. 557, 5 N.W.2d 463; Briesenmeister v. Supreme Lodge Knights of Pythias, 81 Mich. 525, 45 N.W. 977; Ranger, Inc., v. Equitable Life Assur. Soc. of United States, 6 Cir., 196 F.2d 968; *third*, that the proofs of death furnished by the plaintiff-beneficiary do not operate as a waiver of the physician-patient privilege as to any information within the scope of the statements in such proofs, which was acquired by Drs. Brown and Robinson in their professional capacities.

In accordance with this opinion an order will be entered granting the plaintiff's motion to limit the scope of the oral depositions of Dr. A. E. Brown and Dr. Arthur W. Robinson. No costs are allowed in connection with this motion.